**BIO–MEDICAL APPLICATIONS OF GEORGIA, INC., d/b/a/ BMA of Dalton, individually and as assignee of Patient, Plaintiff,**

v.

**CITY OF DALTON, GEORGIA, Defendant.**

**Civil Action No. 4:08–CV–0134–HLM.**

United States District Court,
N.D. Georgia,
Rome Division.

Oct. 13, 2009.

Douglas Thomas Gibson, The Gibson Law Firm, LLC, Marietta, GA, for Plaintiff.

Bernard V. Kearse, III, Kearse & Associates, P.C., Sandy Springs, GA, for Defendant.

## ORDER

HAROLD L. MURPHY, District Judge.

Plaintiff provided dialysis services to a participant (identified as the "Patient") in Defendant's Employee Health Benefit Plan (the "Plan"). Plaintiff alleges that Defendant's decision to terminate Patient's coverage under the Plan when he became eligible for Medicare benefits because of end stage renal disease ("ESRD") violated the Medicare as Secondary Payer ("MSP") Act, 42 U.S.C. § 1395y(b), entitling Plaintiff to double damages under the MSP Acts private cause of action provision. (Compl. ¶¶ 1–18 and Count II). Plaintiffs Complaint also alleges various state law claims. (Id. Counts I, III–IV.) Defendant filed an Answer, and asserted a state law Counterclaim for payments that it asserts were erroneously made to Plaintiff on Patient's behalf. (Docket Entry No. 8.)

This case is before the Court on Defendant's Motion for Summary Judgment [30], Plaintiffs Motion for Summary Judgment [31], the Final Report and Recom-

mendation of United States Magistrate Judge Walter E. Johnson [40], and Plaintiff's Objections [41].

## I. Standard of Review for a Report and Recommendation

28 U.S.C. § 636(b)(1) requires that in reviewing a magistrate judge's report and recommendation, the district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The Court therefore must conduct a *de novo* review if a party files "a proper, specific objection" to a factual finding contained in the report and recommendation. *Macort v. Prem, Inc.*, 208 Fed. Appx. 781, 784 (11th Cir.2006); *Jeffrey S. by Ernest S. v. State Bd. of Educ.*, 896 F.2d 507, 513 (11th Cir.1990); *United States v. Gaddy*, 894 F.2d 1307, 1315 (11th Cir.1990); *LoConte v. Dugger*, 847 F.2d 745, 750 (11th Cir.1988). If no party files a timely objection to a factual finding in the report and recommendation, the Court reviews that finding for clear error. *Macort*, 208 Fed.Appx. at 784. Legal conclusions, of course, are subject to de novo review regardless of whether a party specifically objects. *United States v. Keel*, 164 Fed.Appx. 958, 961 (11th Cir.2006); *United States v. Warren*, 687 F.2d 347, 347 (11th Cir.1982).

## II. Background

### A. Factual Background

Keeping in mind that when deciding a motion for summary judgment, the Court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion, the Court provides the following statement of facts. *See Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*, 496 F.3d 1231, 1241 (11th Cir.2007) (observing that, in connection with summary judgment, court must review all facts and inferences in light most favorable to non-moving party). This statement does not represent actual findings of fact. *In re Celotex Corp.*, 487 F.3d 1320, 1328 (11th Cir.2007). Instead, the Court has provided the statement simply to place the Court's legal analysis in the context of this particular case or controversy.

In compliance with Local Rule 56.1(B)(1), Plaintiff filed Plaintiff's Statement of Material Facts as to Which There is No Genuine Issue to be Tried ("PSMF"), and Defendant filed Defendant's Statement of Material Facts as to Which There Are No Genuine Issues to be Tried ("DSMF"). Additionally, Plaintiff and Defendant filed responses to the other party's material facts ("PRDSMF" and "DRPSMF," respectively).[1]

### 1. Patient's Retirement and Defendant's Plan

Until his retirement on May 7, 2004, Patient worked for Defendant. (DSMF ¶ 2; PRDSMF ¶ 2; PSMF ¶ 13; DRPSMF ¶ 13.) Defendant's Plan provides medical benefits to eligible participants and to certain retirees. (PSMF ¶¶ 14–15; DRPSMF ¶¶ 14–15; *see also* City of Dalton/Dalton Utility Employee Health Benefit Plan at 30–31, attached as Ex. 5 to Def.'s Mot. Summ. J.)[2] Retirees who wish to continue

---

1. Plaintiff objected to Judge Johnson's decision not to include discussion of PSMF ¶¶ 3–4, 11–12, 16–17, 19, 22–32, 34, 43, 45. The Court determines, however, that Judge Johnson's conclusion that those portions of PSMF were not material to the resolution of this case was correct, and Judge Johnson's decision to omit discussion of those proposed facts did not prejudice Plaintiff. The Court therefore overrules Plaintiff's objection.

2. Defendant objected to PSMF ¶ 14. Judge Johnson correctly overruled this objection, and also properly altered the language of PSMF ¶ 14 to reflect the terms of the Plan.

their health coverage under the Plan are required to make monthly contributions or be terminated from the Plan. (PSMF ¶ 18; DRPSMF ¶ 18.)

The Plan states: "Retiree coverage may continue until the retired employee reaches age 65 or becomes eligible for Medicare coverage, which ever comes first." (DSMF ¶ 5; PRDSMF ¶ 5; PSMF ¶ 35; DRPSMF ¶ 35.) Defendant contends that under the above-quoted Plan provision, retirees are entitled to health benefits until they become eligible for Medicare, at which point their benefits are terminated. (DSMF ¶ 4.)[3] GRI was the Plan's third-party administrator at all relevant times. (PSMF ¶ 21; DRPSMF ¶¶ 21.)

### 2. Plaintiff's Provision of Dialysis Services to Patient

Plaintiff asserts that Patient has ESRD. (PSMF ¶ 1.) Defendant objected to this assertion, noting that the evidence cited to in support of PSMF ¶ 1 does not support the conclusion that Plaintiff has ESRD. (DRPSMF ¶ 1.) Judge Johnson concluded that Defendant's objection was valid, but nevertheless assumed for the Purposes of the present Motions, that Patient has ESRD based on his dialysis treatment. (Final Report & Recommendation at 1342–43.) The Court concludes that Judge Johnson properly considered PSMF ¶ 1, and, based on the Court's conclusion that Defendant nevertheless is entitled to summary judgment, Defendant suffered no prejudice from the Court's conclusion that Patient has ESRD.[4]

The parties also dispute when Patient first visited Plaintiff, but it is undisputed

that Plaintiff provided dialysis services to Patient from late November or early December 2004 through April 2007. (DSMF ¶ 1; PRDSMF ¶ 1; PSMF ¶ 5; DRPSMF ¶ 5.) Patient provided Plaintiff with a copy of his health insurance card at his initial visit. (PSMF ¶ 2.)[5]

### 3. The Benefits Assignment from Patient to Plaintiff

The Plan permits an assignment of benefits. (PSMF ¶ 33; DRPSMF ¶ 33.) Patient signed a document entitled, "Fresenius Medical Care North America, Assignment of Benefits Form" (the "Benefits Assignment") on December 1, 2004. (PSMF ¶ 8; DRPSMF ¶ 8.) The Benefits Assignment states in relevant part:

> I hereby assign my [b]enefits to Facility, for services provided to me by Facility. . . .
>
> I hereby authorize Facility to submit claims, on my behalf, to the insurance company(s) listed on the copy of the current insurance card(s) I have provided to Facility, in good faith. . . .
>
> I hereby instruct and direct my insurance company(s), to pay Facility directly. . . .
>
> This is a direct assignment of my rights and benefits under this policy. . . .
>
> . . .
>
> I authorize Facility to be my personal representative, which allows facility to: (1) submit any and all appeals when my insurance company denies benefits to which I am entitled, (2) submit any and all requests for benefit information from my insurance company, and (3) initiate

---

3. Plaintiff admits that the Plan contains the quoted provision, but contends Defendant's interpretation and application of that provision violates the MSP Act. (PRDSMF ¶ 4.)

4. Plaintiff objected to Judge Johnson's conclusion that a conflict in the evidence remained as to whether Patient had ESRD. However, because Judge Johnson assumed, for the pur-

poses of the Report and Recommendation, that Patient had ESRD, Plaintiff suffered no prejudice from that conclusion, and the Court therefore overrules Plaintiffs objection.

5. Judge Johnson correctly concluded that Defendant's objection to PSMF ¶ 2 is unfounded. As Judge Johnson noted, Plaintiff's proposed facts are stated on Patient's insurance card.

formal complaints to any State or Federal agency that has jurisdiction over my benefits.... This assignment shall remain in effect until revoked by me in writing.

(Benefits Assignment, attached as Ex. 1 to Pl.'s Mot. Summ. J.)

The Benefits Assignment defines the assignee as "Facility," which is then further defined as "FMCNA Dalton Dialysis d/b/a Dalton Dialysis." (DSMF ¶ 14; PRDSMF ¶ 14.) Plaintiff claims that the Benefits Assignment identifies Plaintiff as FMCNA Dalton Dialysis d/b/a Dalton Dialysis (PSMF ¶ 9). However, Defendant correctly points out that there is no mention of Plaintiff in the Benefits Assignment. (DRPSMF ¶ 9.) Plaintiff conceded that it is not named as assignee in the Benefits Assignment. (DSMF ¶ 15; PRDSMF ¶ 15.) Plaintiff is not registered as doing business under the fictitious names of "FMCNA Dalton Dialysis" or "Dalton Dialysis" in Whitfield or Fulton County, the location of its registered agent, and neither "FMCNA Dalton Dialysis" nor "Dalton Dialysis" is registered as a legal entity with the Georgia Secretary of State. (DSMF ¶¶ 16, 18; PRDSMF ¶¶ 16, 18.)

Judge Johnson noted correctly that both Plaintiff and Defendant offered proposed facts that contained legal conclusions regarding whether the Benefits Assignment is a legal assignment of Patient's rights to Plaintiff. (Final Report and Recommendation at 1344.) As Judge Johnson noted,

Local Rule 56.1(B)(1)(c) states that the Court will not consider statements of fact that are stated as a legal conclusion. (*Id.*; *see also* N.D. Ga. Loc. R. 56.1(B)(1)(c).) Judge Johnson also correctly concluded that the Court need not determine whether Plaintiff was Patient's assignee because, as discussed *infra,* Plaintiff's MSP claim fails as a matter of law.[6]

### 4. Patient's Medicare Eligibility and Defendant's Response

Patient became eligible for Medicare benefits on November 1, 2004. (PSMF ¶ 6; DRPSMF ¶ 6.) Defendant did not learn that Patient had become eligible for Medicare benefits until about February 2006. (PSMF ¶ 36; DRPSMF ¶ 36; DSMF ¶ 6; PRDSMF ¶ 6 (admitting Defendant became aware of Patient's Medicare eligibility, but asserting exact date is immaterial).) Defendant paid Plaintiff for dialysis treatments provided to Patient from December 16, 2004, to October 7, 2005, in the amount of $90,172.12. (DSMF ¶ 3; PRDSMF ¶ 3.)

After Defendant learned that Patient had become eligible for Medicare, Defendant ceased payments to Plaintiff and retro-terminated Patient's coverage back to November 1, 2004. (DSMF ¶ 7[7]; *see also* PSMF ¶¶ 38–39.[8]) Defendant decided to retro-terminate Patient's benefits based on the written terms of the Plan, and reimbursed Patient for all premiums he had paid after discontinuation of his health benefits under the Plan. (PSMF ¶ 41; DRPSMF ¶ 41; DSMF ¶ 8.) Defendant sent

---

**6.** Plaintiff objected to Judge Johnson's conclusion that a conflict in the evidence existed as to whether Plaintiff had standing to sue as an assignee of Patient's benefits under the Plan. However, because Judge Johnson assumed for the purposes of the Report and Recommendation that Plaintiff had standing, the Court overrules Plaintiff's objection.

**7.** Plaintiff objected to DSMF ¶ 7 as being improperly supported by a citation to a pleading—specifically, DSMF ¶ 7 cites to Plaintiff's

Complaint. Judge Johnson correctly overruled this objection noting that while it is improper for a party to cite to its own pleadings in support of material facts, it is appropriate to cite to an opposing party's pleadings because those pleadings are deemed to be admissions under the Federal Rules of Evidence.

**8.** Judge Johnson appropriately overruled Defendant's objection to PSMF ¶¶ 38–39.

Patient a check in the amount of $2,910, representing premiums he had paid for Plan coverage from November 1, 2004, through February 2006. (PSMF ¶ 40; DRPSMF ¶ 40.[9]) Plaintiff provided dialysis treatments to Patient until approximately April 2007. (DSMF ¶ 9; PRDSMF ¶ 9.[10]) Medicare became the primary payer for Patient's dialysis on May 1, 2007. (*See* Decl. of Sheila Morris Dated July 31, 2009, ¶ 9, attached as Ex. 33 to Pl.'s Mot. Summ. J.)

### 5. Competing Claims for Payment and Refund

Defendant sent letters to Plaintiff in February and March 2006 requesting reimbursement for payments Defendant made on Patient's behalf. (DSMF ¶ 12; PRDSMF ¶ 12.) Defendant sought $86,-572.12—the amount it paid Plaintiff between December 16, 2004, and October 7, 2005, for Patient's treatment. (PSMF ¶ 47; DRPSMF ¶ 47.)

In April 2006, Plaintiff appealed the Plan's decision, arguing that because Patient only became eligible for Medicare because of his ESRD, the Plan's termination of his coverage violated the MSP Act. (PSMF ¶ 42; DRPSMF ¶ 42.[11]) By letter dated August 28, 2006, Defendant

notified Plaintiff that Defendant was denying Plaintiff's appeal. (PSMF ¶ 44.[12])

Plaintiff claims that the Plan has refused to pay a outstanding balance of $690,382.15 for medical benefits it provided to Patient. (Compl. ¶¶ 15–18.) At no time relevant to this case did Plaintiff submit Patient's medical bills to Medicare. (DSMF ¶¶ 10, 21; PRDSM ¶¶ 10, 21.)

### 6. Patient's Coverage Under Another Plan

In response to the Plan's termination of his health coverage, Patient enrolled in a plan sponsored by his spouse's employer, Shaw Industries, effective February 17, 2006. (Decl. of Sheila Morris, ¶ 7.) Acordia National, acting as Shaw's third party administrator, was the primary payer for Patient's dialysis treatments from February 17, 2006, through April 30, 2007. (*Id.*) Based on bills submitted by Plaintiff, Acordia National paid Plaintiff for the dialysis treatments it provided to Patient. (DSMF ¶ 11; PRDSMF ¶ 11.)

### B. Procedural Background

Plaintiff filed this case on August 8, 2008. (Docket Entry No. 1.) Plaintiff's Complaint contains four counts. Count I is a "Claim for Benefits By the Plan."[13]

9. Plaintiff admitted that Defendant refunded premiums to Patient, but objected to Defendant's use of the word "inadvertently" in DSMF ¶ 8. Judge Johnson correctly conformed the record to reflect Plaintiffs objection to the use of the word "inadvertent."

10. Judge Johnson correctly overruled Plaintiffs objection to DSMF ¶ 9 because DSMF ¶ 9 cites to Plaintiff's Complaint to support the proposed fact. *See supra* note 7.

11. As Judge Johnson noted, Plaintiff claims that Defendant knew that Patient's Medicare eligibility was based on ESRD. (PSMF ¶ 46.) Defendant contested this assertion, noting that the documents only reflect Defendant's response to Plaintiff's contention that Patient has ESRD. (DRPSMF ¶ 46.) However, as Judge Johnson concluded, the dispute over

whether Patient had ESRD, and whether Defendant was aware of Patient's condition, is not material to the Court's analysis, but is assumed for the purposes of this Order. (*See supra* 1324.)

12. Judge Johnson correctly overruled Defendant's objection to PSMF ¶ 44 as immaterial, and deemed the fact admitted.

13. Judge Johnson determined that Plaintiff's Count I does not raise a federal issue, noting:

The Plan is a "governmental plan" as that term is defined in the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1002(32). (Compl. ¶ 4; Ans. ¶ 4.) As such, the provisions of subchapter I of ERISA (titled "protection of employee benefit rights") do not apply. See 29 U.S.C.

(Compl. at 4.) Count II contends that Defendants violated the MSP Act by failing to make appropriate reimbursements for Patient's care. (*Id.* at 5.) Count III alleges that Defendant violated O.C.G.A. § 33-4-6 by failing to exercise good faith in connection with its decision to discontinue Patient's coverage under the Plan. (*Id.* at 5-6.) Count IV alleges that Defendant violated O.C.G.A. § 33-24-59.5 by failing to make prompt payment of claims during the benefits coordination period. (*Id.* at 6.)

Defendant filed its Motion for Summary Judgment on July 30, 2009. (Docket Entry No. 30.) Plaintiff filed its Motion for Summary Judgment on July 31, 2009. (Docket Entry No. 31.) Judge Johnson issued his Final Report and Recommendation on September 18, 2009. (Docket Entry No. 40.)

Plaintiff has filed Objections to the Report and Recommendation. (Docket Entry No. 41.) The time period in which Defendant could file objections has expired, and the Court therefore finds that this matter is ripe for resolution.

### III. Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) authorizes summary judgment when "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). The party seeking summary judgment bears the initial burden of showing the Court that summary judgment is appropriate, and may satisfy this burden by pointing to materials in the record. *Reese v. Herbert,* 527 F.3d 1253, 1269 (11th Cir.2008) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)); *Allen v. Bd. of Public Educ. for Bibb County,* 495 F.3d 1306, 1313 (11th Cir.2007). Once the moving party has supported its motion adequately, the non-movant has the burden of showing summary judgment is improper by coming forward with specific facts that demonstrate the existence of a genuine issue for trial. *Allen,* 495 F.3d at 1314.

When evaluating a motion for summary judgment, the Court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion. *Optimum Techs., Inc.,* 496 F.3d at 1241. The Court also must " 'resolve all reasonable doubts about the facts in favor of the non-movant.' " *Rioux v. City of Atlanta, Ga.,* 520 F.3d 1269, 1274 (11th Cir. 2008) (quoting *United of Omaha Life Ins. Co. v. Sun Life Ins. Co. of Am.,* 894 F.2d 1555, 1558 (11th Cir.1990)). Further, the Court may not make credibility determinations, weigh conflicting evidence to resolve disputed factual issues, or assess the quality of the evidence presented. *Reese,* 527 F.3d at 1271; *Skop v. City of Atlanta, Ga.,* 485 F.3d 1130, 1140 (11th Cir.2007). Finally, the Court does not make factual determinations. *In re Celotex Corp.,* 487 F.3d at 1328.

■ Where, as here, the parties file cross-motions for summary judgment, a court " 'must consider each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law.' " *Franklin v.*

---

§ 1003(b); *see also Brett v. Jefferson County, Ga.,* 123 F.3d 1429, 1435 (11th Cir.1997) (ERISA excludes public employees covered by government health plans from its employee benefit plan provisions). Thus, the Complaint contains no federal claim under ERISA's civil enforcement provision, 29 U.S.C. § 1132(a).
(Final Report and Recommendation at 1347 n. 17.) Plaintiff agrees that Count I does not raise a federal issue, and noted that Count I merely "alleges that the Plan is liable to pay for the disputed services rendered to Patient based on the terms of the Plan." (Pl.'s Obj. at 5-6.) The Court concludes that Count I therefore does not raise an issue of federal law.

*Montgomery County, Md,* 2006 WL 2632298, at *5 (D.Md. Sept. 13, 2006) (quoting *Rossignol v. Voorhaar,* 316 F.3d 516, 523 (4th Cir.2003)). The Court applies the standards discussed above when ruling on the motions for summary judgment. *Id.* "The court must deny both motions if it finds there is a genuine issue of material fact, '[b]ut if there is no genuine issue and one or the other party is entitled to prevail as a matter of law, the court will render judgment.'" *Id.* (quoting 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2720 (3d ed. 1983)).

## IV. Discussion

Judge Johnson recommends that the Court grant Defendant's Motion for Summary Judgment on Plaintiff's federal claim under the MSP Act, and that the Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims and Defendant's state law counterclaim. The Court will first consider the viability of Plaintiffs federal claim for double damages under the MSP Act. The Court will then discuss the exercise of supplemental jurisdiction over Plaintiff's state law claims.

### A. Plaintiff's Private Cause of Action Under the MSP Act

#### 1. Background and Statutory Scheme of the MSP Act

Medicare provides federal healthcare funds for three groups of individuals: (1) the aged, (2) the disabled, and (3) persons with ESRD. *National Renal Alliance,*

LLC *v. Blue Cross & Blue Shield of Ga., Inc.,* 598 F.Supp.2d 1344, 1351 (N.D.Ga. 2009). In addition to federal healthcare coverage, many Medicare recipients are also covered by private health care plans. *Id.* Prior to 1981, Medicare generally acted as the "primary" payer in situations where there was double coverage for the Medicare recipient. *Harris Corp. v. Humana Health Ins. Co. of Fla.,* 253 F.3d 598, 600 (11th Cir.2001). In an attempt to reduce the rising cost of Medicare, Congress passed a series of amendments intending to make Medicare coverage "secondary" to any private coverage. *Id.; see also United States v. Travelers Ins. Co.,* 815 F.Supp. 521, 522 (D.Conn.1992) (noting Congress enacted MSP Act "in an effort to reduce federal spending and to protect the financial well being of the Medicare program"). "Those amendments are codified at 42 U.S.C. § 1395y(b), and are referred to as the Medicare as Secondary Payer Act." *National Renal Alliance, LLC,* 598 F.Supp.2d at 1351.

■ The first provision of the MSP Act is titled "Requirements of Group Health Plans." 42 U.S.C. § 1395y(b)(1). Section 1395y(b)(1) imposes certain obligations upon plans covering the aged, the disabled, and those suffering from ESRD. Specifically, § 1395y(b)(1)(C) deals with the obligations of private plans when dealing with persons suffering from ESRD. § 1395y(b)(1)(C) states:

(C) Individuals with end stage renal disease

A group health plan (as defined in subparagraph (A)(v) [14])—

14. Section (A)(v) states: "In this subparagraph, and subparagraph (C), the term 'group health plan' has the meaning given such term in section 5000(b)(1) of the Internal Revenue Code of 1986, without regard to section 5000(d) of Title 26." 42 U.S.C. § 1395y(b)(1)(A)(v). That provision of the IRC defines the term "group health plan" to mean "a plan (including a self-insured plan)

of, or contributed to by, an employer (including a self-employed person) or employee organization to provide health care (directly or otherwise) to the employees, former employees, the employer, others associated or formerly associated with the employer in a business relationship, or their families." 26 U.S.C. § 5000(b)(1). 26 U.S.C. § 5000(d) excludes the federal government or other gov-

(I) may not take into account that an individual is entitled to or eligible for benefits under this subchapter under section 426–1[15] of this title during the 12–month period which begins with the first month in which the individual becomes entitled to benefits under part A under the provisions of section 426–1 of this title, or, if earlier, the first month in which the individual would have been entitled to benefits under such part under the provisions of section 426–1 of this title if the individual had filed an application for such benefits; and

(ii) may not differentiate in the benefits it provides between individuals having end stage renal disease and other individuals covered by such plan on the basis of the existence of end stage renal disease, the need for renal dialysis, or in any other manner;

except that clause (ii) shall not prohibit a plan from paying benefits secondary to this subchapter when an individual is entitled to or eligible for benefits under this subchapter under section 426–1 of this title after the end of the 12–month period described in clause (i).... Effective for items and services furnished on or after August 5, 1997, ... clauses (i) and (ii) shall be applied by substituting "30–month" for "12–month" each place it appears.

42 U.S.C. § 1395y(b)(1)(C). Essentially, the MSP Act forbids a private group health plan from "taking into account" an individual's diagnosis with ESRD, or "differentiating" in the benefits offered to that individual, during the thirty months after that individual becomes eligible, and applies for, Medicare. In the event a person is covered by both Medicare and a private health plan, Medicare acts as a "secondary" payer during the thirty-month coordination period. *See* 42 C.F.R. § 411.162(a) (2009).[16]

The regulations implementing the MSP Act describe in more detail what "taking into account," and "differentiating" in terms of benefits, means under the statute. 42 C.F.R. § 411.108(a) states:

(a) Examples of actions that constitute "taking into account". Actions by GHPs or LGHPs that constitute taking into account that an individual is entitled to Medicare on the basis of ESRD, age, or disability (or eligible on the basis of ESRD) include, but are not limited to, the following:

(1) Failure to pay primary benefits as required by subpart[ ] F... of this part 411.

. . . .

(3) Terminating coverage because the individual has become entitled to Medicare, except as permitted under COBRA continuation coverage provisions....

42 C.F.R. § 411.108(a) (2009).

42 C.F.R. § 411.161 also discusses the terms "differentiation" and "taking into account."

(a) Taking into account—

---

ernmental entities from the above-quoted definition of an employer.

**15.** Section 426–1 is Medicare's ESRD program. *See* 42 U.S.C. § 426–1.

**16.** Although the regulations discussing the MSP Act have not been updated to reflect the longer thirty-month coordination period, the agency responsible for administering Medicare, the Centers for Medicare & Medicaid Services, has updated its materials and requires the statutory thirty-month coordination period. *See* Medicare Secondary Payer (MSP) Manual, Chapter 2—MSP Provisions, Section 20 (available at http://www.cms.hhs.gov/manuals/downloads/msp105c02.pdf) (last visited October 6, 2009).

(1) Basic rule. A GHP may not take into account that an individual is eligible for or entitled to Medicare benefits on the basis of ESRD during the coordination period specified in § 411.162(b) and (c). Examples of actions that constitute taking into account Medicare entitlement are listed in § 411.108(a).

. . . .

(b) Nondifferentiation.

(1) A GHP may not differentiate in the benefits it provides between individuals who have ESRD and others enrolled in the plan, on the basis of the existence of ESRD, or the need for renal dialysis, or in any other manner.

(2) GHP actions that constitute differentiation in plan benefits (and that may also constitute "taking into account" Medicare eligibility or entitlement) include, but are not limited to the following:

(I) Terminating coverage of individuals with ESRD, when there is no basis for such termination unrelated to ESRD (such as failure to pay plan premiums) that would result in termination for individuals who do not have ESRD.

42 C.F.R. § 411.161(a)-(b) (2009). *See also* 42 C.F.R. § 411.102(a)(1) (prohibiting group health plans from "tak[ing] into account ESRD-based Medicare eligibility," or "differentiat[ing] in the benefits," provided to persons with ESRD).

While Medicare can be a "secondary" payer in certain situations, when the "primary" payer is not expected to pay within 120 days, Medicare may make a conditional payment with the expectation that the "primary" payer will reimburse Medicare if the primary payer is obliged to do so. *See* 42 C.F.R. § 411.21 (2009) (establishing 120 day payment requirement); *see also* 42 U.S.C. § 1395y(b)(2)(B)(i)-(ii) (discussing authority to make conditional payment); *Glover v. Liggett Group, Inc.,* 459 F.3d 1304, 1306 (11th Cir.2006) (same). When an individual has ESRD-based Medicare eligibility and also has private group health plan coverage, Medicare "may make a conditional payment if—(1) The beneficiary, the provider, or the supplier that has accepted assignment files a proper claim under the group health plan and the plan denies the claim in whole or in part. . . ." 42 C.F.R. § 411.165(a)(1)(2009). However, if the group health plan fails to make a payment because it contends that it is secondary to Medicare, Medicare will not make a conditional payment. *Id.* § 411.165(b)(1)(i).[17]

In order to ensure reimbursement when Medicare makes conditional payments on behalf of a group health plan, the MSP Act authorizes the United States to sue a delinquent primary payer for double damages. 42 U.S.C. § 1395y(b)(2)(B)(iii); *see also United States v. Baxter Int'l, Inc.,* 345 F.3d 866, 875 (11th Cir.2003) ("Medicare is empowered to recoup from the rightful primary payer (or from the recipient of such payment) if Medicare pays for a service that was, or should have been, covered by the primary insurer.").

The MSP Act also establishes "a private cause of action for damages (which shall be in an amount double the amount otherwise provided) in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement). . . ." 42 U.S.C. § 1395y(b)(3)(A). In the event a private party bringing an action for dam-

---

**17.** Judge Johnson correctly concluded that based on the above provisions, Medicare could have made conditional payments in this case because the Plan denied Patient's claims based on a lack of coverage, rather than because it claimed that it was a "secondary" payer.

ages under the MSP Act is successful, the "United States shall be subrogated (to the extent of payment made under this subchapter for such an item or service) to any right under this subsection of an individual or any other entity to payment with respect to such item or service under a primary plan." 42 U.S.C. § 1395y(b)(2)(B)(iv); *Frazer v. CNA Ins. Co.*, 374 F.Supp.2d 1067, 1077 (N.D.Ala. 2005) ("The statute provides that a private litigant who recovers a reimbursement for claims paid by Medicare and which have been denied by an insured defendant is required to turn over the amounts of such claim to the government."). The statute provides for double damages in order to allow Medicare to recoup any conditional payments, and to offer a reward to the private litigant bringing the action. *Frazer*, 374 F.Supp.2d at 1080: *accord Stalley v. Catholic Health Initiatives*, 509 F.3d 517, 525 (8th Cir.2007) ("[W]ith the private right of action and the double damages, the beneficiary can pay back the government for its outlay and still have money left over to reward him for his efforts.").

### 2. Analysis

Judge Johnson identified two independent legal reasons why Plaintiff's claims for double damages under the MSP Act fail as a matter of law. The Court will discuss each in turn.

#### i. Medicare Has Paid No Claims

■ Judge Johnson concluded that, based on the language of the statute, the legislative history, and the cases interpreting the MSP Act, Plaintiff's claim for double damages under the MSP Act fails as a matter of law because Medicare has not paid any claims on behalf of Patient. Judge Johnson noted:

In *Stalley v. Catholic Health Initiatives*, 509 F.3d 517, the Eighth Circuit analyzed the limited legislative history and comments from other cases to glean

the following about the purpose of the private cause of action:

The parties do not point us to any legislative history explaining the purpose of the private right of action, nor have we found any legislative history directly explaining how the private right was meant to work. *See* H.R. Conf. Rpt. No. 99–1012, at 321 (1986), reprinted in 1986 U.S.C.C.A.N. 3868, 3966 (merely stating that the private right of action is "to enforce the provision for the aged"); S. Rpt. No. 99–348, at 140 (1986) (stating that obligation of primary payers "would be enforceable by private action or by the Federal Government"). Courts considering the provision have generally agreed that the apparent purpose of the statute is to help the government recover conditional payments from insurers or other primary payers. *See, e.g., United Seniors [Ass'n v. Philip Morris USA ]*, 500 F.3d [19,] 21–22 [ (1st Cir.2007) ] ("To facilitate recovery of these conditional payments, the MSP ... (iii) creates a private cause of action with double recovery to encourage private parties to bring actions to enforce Medicare's rights.") (citation omitted); *Manning [v. Utils. Mut. Ins. Co. Inc.]*, 254 F.3d [387,] 396–97 & n. 8 [ (2d Cir.2001) ] ("The history of the MSP legislation is consistent with our view that the private right of action was created to save money for the Medicare system."); *Frazer*, 374 F.Supp.2d at 1077 ("The legislation's incentive to bring a private lawsuit is clearly based in turn upon the subrogation right of the government to obtain a portion of the recovery. The recovery of costs by Medicare is the primary purpose of the MSP."); *see also Harris Corp. v. Humana Health Ins. Co.*, 253 F.3d 598, 606 (11th Cir.2001) (per curiam)

("A private cause of action for double damages ... serves Congress' interest in the fiscal integrity of the Medicare program by deterring private insurers primary to Medicare under the statute from attempting to lay medical costs at the government's doorstep."). This is consistent with inclusion of the provision in The Omnibus Budget Reconciliation Act of 1986, which was intended to reduce government spending. *See* Statement by President of the United States, 22 Weekly Compilation of Presidential Documents 1421 (Oct. 27, 1986), reprinted in 1986 U.S.C.C.A.N. 4073–74. Additionally, as the Second Circuit pointed out in *Manning*, 254 F.3d at 397 n. 8, when Senator David Durenburger introduced the President's Medicare proposals for 1986, which included the private right of action, he referred to the proposals as "health care cost reduction proposals." 132 Cong. Rec. 21935 (Aug. 15, 1986).

The thinking behind the statute is apparently that (1) the beneficiary can be expected to be more aware than the government of whether other entities may be responsible to pay his expenses; (2) without the double damages, the beneficiary might not be motivated to take arms against a recalcitrant insurer because Medicare may have already paid the expenses and the beneficiary would have nothing to gain by pursuing the primary payer; and (3) with the private right of action and the double damages, the beneficiary can pay back the government for its outlay and still have money left over to reward him for his efforts. *Id.* at 524–25.

Given that the purpose of the private cause of action is to save the government money by giving private citizens incentive to recover funds erroneously paid by Medicare, courts agree that "a MSP 'double damages' claim may be maintained only where Medicare has, in fact, paid claims that a primary insurer should have, but refused, to pay." *Leggette et al. v. B.V. Hedrick Gravel & Sand Co. et al.*, Case No. 3:04–CV–00530–CH, at *19 (W.D.N.C. May 24, 2006) (copy filed as Def.'s Ex. R [30–28]). *See also Manning*, 254 F.3d at 391–92 ("Congress has authorized a private cause of action and double damages against entities designated as primary payers that fail to pay for medical costs for which they were responsible, which are borne in fact by Medicare."); *National Renal*, 598 F.Supp.2d at 1354 (recognizing private cause of action where Medicare paid for medical treatment); *Woods v. Empire Health Choice, Inc.*, No. 05–CV–0577 (DLI)(LB), 2007 WL 2406876, at *2 (E.D.N.Y. Aug. 20, 2007) ("§ 1395y(b)(3)(A) allows 'individuals whose medical bills are improperly denied by insurers and instead paid by Medicare' to bring suit, and 'the government is subrogated to the right of the private citizen for the recovery of such funds.'") (quoting *Manning*, 254 F.3d at 394); *Glover v. Philip Morris USA*, 380 F.Supp.2d 1279, 1282 (M.D.Fla.2005) ("The MSP also contains a private right of action which gives private citizens an incentive to aid the government in recovering 'funds erroneously paid by Medicare.'") (quoting *Manning*, 254 F.3d at 397 n. 8), *aff'd*, 459 F.3d 1304 (11th Cir.2006); and *Frazer*, 374 F.Supp.2d at 1078 ("The consensus of reported cases is that 'a private cause of action and double damages against entities designated as primary payers that fail to pay for medical costs for which they are responsible, *which are borne in fact by Medicare'*") (quoting *Manning*, 254 F.3d at 391–92) (emphasis added in *Frazer*).

(Final Report & Recommendation at 1350–52 (footnotes omitted).) Based on his dis-

cussion of the relevant law, and on the undisputed fact that Medicare made no conditional payments for Patients treatment, Judge Johnson concluded that Plaintiff could not maintain an private action for double damages under the MSP Act. (*Id.* at 1329.)

Plaintiff objected to Judge Johnson's conclusion that Medicare must have made payments in order for a private party to maintain a suit under the MSP Act, arguing that the clear language of the statute and the relevant case law allow for private cases when Medicare has not made any conditional payments, and that the statute itself barred Medicare from making conditional payments in this case.

Plaintiff's first argument fails for the same reason Judge Johnson rejected it. While it is true that the language of the statute does not specifically state that Medicare must have made a payment in order to sustain an action, the cases analyzing the statute make a persuasive case that the primary reason for allowing private causes of action is to aid Medicare in collecting payments that it has actually made. Plaintiff has failed to cite to a single case that specifically holds that a private party can maintain an action in the absence of actual payment by Medicare.[18] As Judge Johnson noted, several cases instead hold that Medicare must make a payment in order for a private party to maintain an action.[19] Based on the cases cited by Judge Johnson, and on the language of the MSP Act itself, the Court overrules Plaintiff's objection to Judge Johnson's conclusion that Plaintiff's claim fails because Medicare has made no payments on behalf of Patient.[20][21]

**18.** Plaintiff cited to only one case that it contended explicitly held that a private party could maintain a case in the absence of payments by Medicare. *Harris v. Humana Health Ins. Co. of Fla.*, 253 F.3d 598, 605–606 (11th Cir.2001) (stating that if a patient's group health plan "denied a timely claim for benefits based solely on her eligibility for Medicare, it appears that the MSP statute would afford [her] a private cause of action for double damages....''). Judge Johnson rejected Plaintiffs contention that this portion of *Harris* established that a private party need not show that Medicare had actually made payments on behalf of the patient for two reasons. First, the passage is *dicta* because *Harris* was not a case brought by a private party, but instead was a case between two group health plans attempting to determine the effect of the MSP Act on their duty to make payments for one of their plan members. Second, as Judge Johnson noted, the cited portion does not address specifically whether a private party would need to show actual payment to Medicare, but simply states that he or she has a cause of action when his or her plan inappropriately refuses to pay, and other portions of the opinion make it clear that the private cause of action was put in place to protect the fiscal integrity of the Medicare program. *Id.* at 606. The Court agrees with Judge Johnson that *Harris* does not support Plaintiffs contention that a private party may maintain a suit under the MSP Act in the absence of Medicare payments.

**19.** Judge Johnson also noted that an affiliate of Plaintiff, represented by Plaintiffs counsel, raised this exact issue in the *Leggette* case, Case No. 3:04–CV–00530–CH (W.D.N.C. May 24, 2006). As noted above, the court in *Leggette* rejected the plaintiff's argument, and the plaintiff did not appeal the court's decision. (Final Report & Recommendation at 1352 n. 25.)

**20.** Plaintiff's second argument—that Medicare was forbidden from making payments on behalf of Patient—is irrelevant because it is clear that, absent a payment by Medicare, Plaintiff can not maintain its action against Defendant. The Court therefore overrules Plaintiffs objection.

**21.** Plaintiff also objected to Judge Johnson's conclusion that requiring a Medicare payment is consistent with the statute's aim of seeking to avoid financial harm to the program. The Court overrules this objection as inconsistent with the statute and the relevant case law.

### ii. Plaintiff has Failed to Demonstrate the Plan's Obligation to Make Payment

■ Judge Johnson also concluded that Plaintiff's MSP Act claim fails as a matter of law because Plaintiff has not demonstrated that the Plan is obligated to make payment on behalf of Patient. Judge Johnson explained:

The obligation to reimburse [Medicare] is triggered upon "demonstration" that the primary plan is responsible for those payments, as follows:

A primary plan, and an entity that receives payment from a primary plan, shall reimburse the appropriate Trust Fund for any payment made by the Secretary . . . if it is demonstrated that such primary plan has or had a responsibility to make payment with respect to such item or service.

42 U.S.C. § 1395y(b)(2)(B)(ii). The MSP Act describes how that responsibility may be demonstrated:

A primary plan's responsibility for such payment may be demonstrated by a judgment, a payment conditioned upon the recipient's compromise, waiver, or release (whether or not there is an admission of liability) of payment for items or services included in a claim against the primary plan or the primary plan's insured, or by other means.

42 U.S.C. § 1395y(b)(2)(B)(ii).

As also discussed above, a primary plan that fails to pay or reimburse is subject to suit for double damages by the United States (*see* 42 U.S.C. § 1395y(b)(2)(B)(iii)) or by a private party (*see id.* § 1395y(b)(3)(A)), with the government having a right of subrogation for the amount of its conditional payment against the private party's recovery. *See id.* § 1395y(b)(2)(B)(iii)-(iv). However, the "weight of the authority" holds that the MSP Act requires a primary plan to have a demonstrated obligation to pay before a private cause of action may arise. *National Committee,* 601 F.Supp.2d at 509; *accord Bio–Medical Applications of Tenn., Inc. d/b/a BMA of Kingsport individually and as Assignee of Patient v. Central States, Se. and Sw. Areas Health and Welfare Fund,* No. 2:08–CV–228, 2008 WL 5110800, at *1, 2008 U.S. Dist. LEXIS 97748, at *4 (E.D.Tenn. Dec. 1, 2008); *Stalley v. Erlanger Health Sys.,* No. 1:06–CV–194, 2007 WL 672301, at *5 (E.D.Tenn. Feb. 28, 2007); *Stalley v. Sumner Reg'l Health Sys., Inc.,* No. 2:06–0074, 2007 WL 173686, at *6–7 (M.D.Tenn. Jan. 18, 2007); and *Fresenius Med. Care Holdings, Inc. et al. v. Brooks Food Group, Inc. et al.,* No. 3:07CV14–H, 2007 WL 2480251, at *7–8, 2007 U.S. Dist. LEXIS 63618, at *21–23 (W.D.N.C. Aug. 28, 2007).

The leading case on this issue is the Eleventh Circuit's opinion in *Glover,* 459 F.3d 1304, where the court held that the MSP Act makes it a condition precedent to reimbursement that there be a demonstrated responsibility to pay for the items or services. *Id.* at 1309. The court stated as follows:

Until Defendants' responsibility to pay for a Medicare beneficiary's expenses has been demonstrated (for example, by a judgment), Defendants' obligation to reimburse Medicare does not exist under the relevant provisions. Therefore, it cannot be said that Defendants have "failed" to provide appropriate reimbursement. Based on this language, we conclude that an alleged tortfeasor's responsibility for payment of a Medicare beneficiary's medical costs must be demonstrated before an MSP private cause of action for failure to reimburse Medicare can correctly be brought under section 1395y(b)(3)(A).

*Id.*

*Glover* further reasoned that, without this condition precedent, "defendants would have no opportunity to reimburse Medicare after responsibility was established but before the penalty attached." *Glover*, 459 F.3d at 1309. "To hold otherwise would open a primary insurer to double damages each time it contests a claim, rather than only when it fails to pay after responsibility has been established." *Fresenius*, 2007 WL 2480251, at *8, 2007 U.S. Dist. LEXIS 63618, at *22–23. Because the City's responsibility for the contested payments for dialysis services has not yet been demonstrated, plaintiff has no private cause of action under the MSP Act.

(Final Report & Recommendation at 1353–54.)

Plaintiff objected to Judge Johnson's reliance on *Glover*, arguing that the case was wrongly decided and that it did not apply to this case. Judge Johnson properly rejected both arguments. First, Plaintiff contended that the statutory language, which allows a private cause of action against a "a primary plan which fails to provide for primary payment (or appropriate reimbursement) in accordance with paragraphs (1) and (2)(A)," 42 U.S.C. § 1395y(b)(3)(A), only incorporates paragraphs (1) and (2)(A), and therefore the Eleventh Circuit erred when it applied the "demonstrated by" language from paragraph (B)(ii). (Pl.'s Resp. Def.'s Mot. Summ. J. at 33–35.) Judge Johnson was correct to reject this argument. As he noted:

The two paragraphs referenced in the private cause of action provision, paragraphs (1) and (2)(A), are sections 1395y(b)(1) and 1395y(b)(2)(A), respectively. . . . Paragraph (2)(A), § 1395y(b)(2)(A), provides as follows:

(2) Medicare secondary payer

  (A) In general

Payment under this subchapter may not be made, except as provided in subparagraph (B), with respect to any item or service to the extent that—

  (i) payment has been made, or can reasonably be expected to be made, with respect to the item or service as required under paragraph (1), or

  (ii) payment has been made or can reasonably be expected to be made under a workmen's compensation law or plan of the United States or a State or under an automobile or liability insurance policy or plan (including a self-insured plan) or under no fault insurance.

In this subsection, the term "primary plan" means a group health plan or large group health plan, to the extent that clause (i) applies, and a workmen's compensation law or plan, an automobile or liability insurance policy or plan (including a self-insured plan) or no fault insurance, to the extent that clause (ii) applies. An entity that engages in a business, trade, or profession shall be deemed to have a self-insured plan if it carries its own risk (whether by a failure to obtain insurance, or otherwise) in whole or in part.

42 U.S.C. § 1395y(b)(2)(A). As can be seen in the above-quoted language, paragraph (2)(A) expressly directs one to subparagraph (B). *Glover's* application of the standards of paragraph (B)(ii), 42 U.S.C. § 1395y(b)(2)(B)(ii), was not in error.

(Final Report & Recommendation at 1354–55.) Based on the clear statutory language, Judge Johnson correctly rejected Plaintiff's first argument against applying *Glover* to the facts of this case.

Judge Johnson also correctly rejected Plaintiff's second argument against applying *Glover's* requirement that a party must

demonstrate a requirement to pay *before* suing a group health plan. Plaintiff argued that *Glover* should not apply because, unlike the *Glover* case, Medicare has not paid any benefits in this case. Essentially, Plaintiff argued that *Glover* should not apply because Plaintiff is not seeking a reimbursement of funds paid by Medicare, but is instead alleging that the Plan has simply failed to pay its claims. (Pl.'s Resp. Def.'s Mot. Summ. J. at 33–35.)

However, as Judge Johnson noted, Plaintiff's second argument is directly foreclosed by relevant case law. The *National Renal Alliance, LLC*, case discussed this exact issue. The court in *National Renal Alliance, LLC* concluded that it does not matter whether a plaintiff is seeking reimbursement for Medicare or for a plan's failure to pay benefits. The court noted:

> Under Medicare as a Secondary Payer Act, the group health plan's responsibility to make a reimbursement is established by "a judgment, a payment conditioned upon the recipient's compromise, waiver, or release (whether or not there is a determination or admission of liability) [i.e., a settlement], or by other means." 42 U.S.C. § 1395y(b)(2)(B)(ii); *see also Glover v. Liggett Group, Inc.*, 459 F.3d 1304, 1309 (11th Cir.2006) (per curiam). Plaintiffs assert they are positing a different type of claim because they are not seeking to enforce a primary plan's obligation to reimburse Medicare. Even if they were, Plaintiffs continue, Blue Cross's obligation to pay for out-of-network expenses is established by the insureds' group health plans. For the purposes of the "demonstrated responsibility" to pay requirement, however, the court sees no reason to distinguish between a claim seeking reimbursement and a claim alleging that the insurer failed to pay claims.

*National Renal*, 598 F.Supp.2d at 1354 n. 5. Based on the clear holding of *National Renal Alliance, LLC*, Judge Johnson correctly rejected Plaintiff's second argument in favor of disregarding the Eleventh Circuit's holding in *Glover*. Because Judge Johnson rejected Plaintiffs arguments against applying *Glover* to the facts of this case, he concluded that the Court should grant Defendant's Motion for Summary Judgment because Plaintiff has not demonstrated by any of the means contemplated by 42 U.S.C. § 1395y(b)(2)(B)(ii) that Defendant is obligated to make payments on Patient's behalf.

Plaintiff objected to Judge Johnson's conclusion that it must demonstrate that Defendant is obligated to pay before bringing suit. Plaintiff argues that Congress failed to include 42 U.S.C. § 1395y(b)(2)(B)(ii)'s requirement that a responsibility to make payment be demonstrated before filing suit in the sections of the MSP Act establishing when a group health plan is obligated to make payments. *See* 42 U.S.C. § 1395y(b)(1)(A) & (2)(A). Essentially, Plaintiff argues that the sections discussing when a plan is required to make payments clearly establish an obligation to pay, and therefore Plaintiff does not need to offer any other proof that Defendant is obligated to pay for Patient's dialysis services. This argument fails for several reasons. First, it is directly contrary to binding Eleventh Circuit precedent. *Glover*, 459 F.3d 1304. Second, applying Plaintiffs argument to the MSP Act would render meaningless 42 U.S.C. § 1395(y)(b)(2)(B)(ii). The Court must read the statute so that meaning is given to all of the statute's provisions, and because Plaintiffs argument robs § b(2)(B)(ii) of any meaning, the Court must be reject it. *See United States v. One (1) Douglas A–26B Aircraft*, 662 F.2d 1372, 1374 n. 6 (11th Cir.1981) (describing "established principle of statutory con-

struction that all words within a statute are intended to have meaning and should not be construed as surplusage"). The Court consequently overrules Plaintiffs objection.

### iii. Plaintiff's Request for a Declaratory Judgment is Inappropriate.

Alternatively, Plaintiff requested a declaration that Defendant violated the MSP Act when it terminated Patient.[22] Judge Johnson considered Plaintiff's request for a declaration, and recommended that the Court deny Plaintiff's request. For the following reasons, the Court adopts Judge Johnson's recommendation.

Judge Johnson rejected Plaintiff's request for a declaration for two reasons. First, Judge Johnson correctly noted that, even if the Court declared that Defendant had in fact violated the MSP Act, Plaintiff would still "not have a private cause of action because Medicare has paid no claims and [P]laintiff has not demonstrated [D]efendant's responsibility for contested payments." (Final Report & Recommendation at 1356.) The Court notes that Judge Johnson is absolutely correct that, even with a declaration that Defendant violated the MSP Act, Plaintiff still could not sue under the MSP Act's private cause of action provision.

Second, Judge Johnson concluded that Plaintiff's request for a declaratory judgment essentially sought to create a new private cause of action that did not require that Medicare make actual payments. As Judge Johnson noted:

> The Supreme Court directs that courts should be loath to imply a private remedy when Congress has created a governing statutory scheme. *See Alexander v. Sandoval,* 532 U.S. 275, 290, 121 S.Ct.

1511, 1521–22, 149 L.Ed.2d 517 (2001) ("The express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others."); *Transamerica Mortgage Advisors, Inc. (TAMA) v. Lewis,* 444 U.S. 11, 19, 100 S.Ct. 242, 247, 62 L.Ed.2d 146 (1979) ("[I]t is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it.").

> The Eleventh Circuit followed this direction in *Christ v. Beneficial Corp.,* 547 F.3d 1292 (11th Cir.2008), when it held that, because the civil liability provisions of the Truth in Lending Act, 15 U.S.C. § 1640, reflect a comprehensive scheme of remedies, plaintiffs were precluded from implied equitable relief. 547 F.3d at 1298.

(Final Report & Recommendation at 1356.) Judge Johnson correctly noted that the reasoning used by the Eleventh Circuit in *Christ* applies to this case—Congress created a comprehensive statutory scheme in the MSP Act, and the Court should he very hesitant to create a new, implied private cause of action in this area.

Additionally, Judge Johnson also pointed out that important policy reasons counsel against creating an implied right of action in this area. Specifically, if the Court fashioned a new private right of action that did not require payment by Medicare before a plaintiff could bring suit under the MSP, group health plans would have an incentive to reduce the coverage available to retirees in Patient's position. Judge Johnson concluded that "balancing whether a medical service provider like BMA should recover funds or whether early re-

---

**22.** Plaintiff did not seek leave to amend its Complaint to add a count seeking declaratory relief, but instead simply requested a declaration in its Motion for Summary Judgment. (*See* Pl.'s Br. Supp. Mot. Summ. J. at 22 n.3.)

tirees should retain their insurance coverage in a situation presented by the facts here is a decision best left to the legislative branch." (Final Report & Recommendation at 1356.) The Court agrees with Judge Johnson that the Court should not grant Plaintiff's request to fashion a new implied right of action under the MSP Act.

Plaintiff objected to Judge Johnson's rejection of its request for a declaration, arguing that Judge Johnson misunderstood what Plaintiff asked the Court to do. Plaintiff contends that its request for a declaration that Defendant violated the MSP Act essentially relates to Count I, which simply sought benefits under the Plan. Plaintiff argues that its request for declaratory relief did not ask the Court to create an implied cause of action, but instead simply asked the Court to make a determination that Defendant had failed to live up to its obligations under the Plan. However, as Plaintiff plainly admits, "Count I arises under state law." (Pl.'s Objs. at 7.) As discussed *infra* Part IV. B., the Court declines to exercise its discretion to retain jurisdiction over Plaintiffs state law claims. Plaintiff's request for a declaration under state law is therefore moot, and the Court overrules Plaintiff's objection.

#### iv. Conclusion

As discussed above, Judge Johnson correctly recommended that the Court grant Defendant's Motion for Summary Judgment related to Plaintiffs MSP Act claim because Medicare has made no payments on Patient's behalf, and because Plaintiff can not demonstrate that Defendant is obligated to make payments under the Plan.[23] The Court agrees with all of Judge Johnson's conclusions regarding Plaintiff's MSP Act claim, adopts that portion of the Final Report and Recommendation in full, and overrules all of Plaintiffs corresponding objections.[24] The Court therefore grants Defendant's Motion for Summary Judgment on Plaintiffs MSP Act Claims. Because the Court concludes that Plaintiff's MSP Act claim fails as a matter of law, the Court denies Plaintiffs Motion for Summary Judgment on that same claim.

### B. Plaintiff's State Law Claims

Judge Johnson recommends that the Court decline to exercise discretion over Plaintiffs remaining state law claims. For the following reasons, the Court adopts Judge Johnson's recommendation.

First, Judge Johnson properly concluded that Plaintiffs MSP Act claim provided the only basis for federal jurisdiction

**23.** Judge Johnson correctly determined that, because he was recommending that the Court grant summary judgment based on the issues discussed above, he need not discuss Defendant's alternative theories in support of summary judgment. (Final Report & Recommendation at 1356–57 n. 31.)

**24.** The remainder of Plaintiff's objections to Judge Johnson's Report and Recommendation relate to the Judge's citation to the legislative history regarding the MSP Act, and to his references to public policy. The Court rejects this portion of Plaintiff's objections, because it is appropriate to consider legislative history and public policy considerations in the face of even arguably unambiguous

statutory language. *See Harris v. Garner,* 216 F.3d 970, 977 (11th Cir.2000) ("Notwithstanding that well-recognized and bedrock principle [that there is no need to consult legislative history when the meaning of a statute is plain from its words], sometimes judges who find that legislative history supports and complements the plain meaning of statutory language cannot resist the temptation to set out that history. We have given in to that temptation more than once."). Judge Johnson's consideration of the legislative history also is consistent with the cases that have analyzed the MSP Act. The Court therefore overrules Plaintiffs objection to this portion of the Final Report and Recommendation.

in this case, and that Plaintiff and Defendant do not meet the diversity requirements of 28 U.S.C. § 1332. Plaintiff did not allege that it was diverse from Defendant in its Complaint, but the Court is obligated to retain jurisdiction if it appears that diversity jurisdiction is present. *Doran v. Lee*, 287 F.Supp. 807, 813 (W.D.Pa.1968)(complaint should not be dismissed if it reveals that any grounds for jurisdiction exist). Plaintiff has the burden to establish that diversity jurisdiction is present. *Fitzgerald v. Seaboard Sys. R.R., Inc.*, 760 F.2d 1249, 1251 (11th Cir. 1985). Diversity jurisdiction is present only if no plaintiff is a citizen of the same state as any defendant. *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 412 (11th Cir.1999) (*citing Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806)).

■ Plaintiff is a corporation. A corporation "shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c)(1). Allegations of citizenship regarding corporations therefore "must set forth the state of incorporation as well as the principal place of business...." *Getty Oil Corp. v. Ins. Co. of N. Am.*, 841 F.2d 1254, 1259 (5th Cir.1988) (citation omitted); *accord McCready v. eBay, Inc.*, 453 F.3d 882, 891 (7th Cir.2006); *Ryan v. Flame Refractories, Inc.*, 759 F.Supp. 774, 776–77 n. 3 (S.D.Ala.1991).

■ In its Complaint, Plaintiff alleges that it is a "foreign corporation, duly organized and existing under the laws of Delaware," but fails to mention where Plaintiff has its principal place of business. A pleading is insufficient for jurisdictional purposes when it lacks an allegation of both a corporation's state of incorporation and the location of its principal place of business. *Joiner v. Diamond M Drilling Co.*, 677 F.2d 1035, 1039 (5th Cir.1982); *see also McCready*, 453 F.3d at 891 (dismiss-

ing complaint where party failed to allege principal place of business of corporation). Because Plaintiff has failed to plead diversity jurisdiction properly, the Court determines that Judge Johnson correctly concluded that no diversity jurisdiction is present in this case.

■ Because the Court grants Defendant's Motion for Summary Judgment with regard to Plaintiffs only federal claim, and diversity jurisdiction does not exist, the Court concludes that the only potential remaining basis for jurisdiction is provided by the supplemental jurisdiction statute, 28 U.S.C. § 1367. Section 1367 states:

> Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a). Even though the Court's decision to dismiss Plaintiff's federal claim does not rob the Court of supplemental jurisdiction under § 1367, the Court has discretion to decline to exercise supplemental jurisdiction over the remaining non-diverse state law claims. *Baggett v. First Nat'l Bank of Gainesville*, 117 F.3d 1342, 1352 (11th Cir.1997); *see also McCulloch v. PNC Bank, Inc.*, 298 F.3d 1217, 1227 (11th Cir.2002).

28 U.S.C. § 1367(c) states:

> (c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—
> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over

which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction

28 U.S.C. § 1367(c). In addition to the factors listed in section 1367(c), the Court may also consider other factors, including "considerations of judicial economy, convenience, fairness, and comity. . . ." *Baggett*, 117 F.3d at 1353 (citations omitted); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) (justification for pendent jurisdiction "lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims").

■ Judge Johnson concluded that the relevant factors in this case counsel in favor of declining to exercise supplemental jurisdiction over Plaintiffs remaining claims. He stated:

> The state law claims remaining in this case are complex, such as whether the assignment contract provides BMA with standing to sue or whether sovereign immunity bars plaintiff's claims against the City. Moreover, the other state contract and insurance claims are best left to a state court experienced in application of that law. Indeed, the Supreme Court has directed lower federal courts to avoid "[n]eedless decisions of state law," especially when federal claims are dismissed before trial. *Gibbs*, 383 U.S. at 726, 86 S.Ct. at 1139.
>
> In light of the foregoing, principles of judicial economy, convenience, fairness, and comity counsel the undersigned to **RECOMMEND** that the District Court decline supplemental jurisdiction under § 1367(c) over plaintiff's remaining state

law claims. *See Carr v. Tatangelo*, 156 F.Supp.2d 1369, 1380–81 (M.D.Ga.2001) (dismissing state law claims in conjunction with granting summary judgment on federal claims); *see also Gibbs*, 383 U.S. at 726, 86 S.Ct. at 1139 ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.") Thus, the Court should **DISMISS** plaintiff's state law claims found in Counts I, III and IV of the Complaint **WITHOUT PREJUDICE**. *See Covenant Media of Ga., LLC v. City of Lawrenceville, Ga.*, 580 F.Supp.2d 1313, 1319 (N.D.Ga.2008) (where the court dismissed the plaintiff's federal claims, and the remaining claims involved relatively complex issues of state law, the court dismissed the remaining state law claims without prejudice).

> [A] [s]imilar analysis applies to defendant's counterclaim, which was brought under this Court's supplemental jurisdiction. (*See* Def.'s Counterclaim ¶ 1.) *See Dawson v. Office Depot, Inc.*, No. 09–60146–CIV, 2009 WL789662, *2 (S.D.Fla. Mar. 23, 2009) (supplemental jurisdiction should not be exercised over the state law claims asserted in defendants' counterclaim). The undersigned further **RECOMMENDS** that the District Court decline to exercise supplemental jurisdiction and **DISMISS** the City's counterclaim **WITHOUT PREJUDICE**.

(Final Report & Recommendation at 1358–59.)

The Court agrees with Judge Johnson's analysis, and concludes that considerations of judicial economy, fairness, and comity, weigh in favor of the Court declining to exercise its supplemental jurisdiction over Plaintiffs state law claims and Defendant's counterclaim. The Court therefore adopts

the portion of Judge Johnson's Report and Recommendation regarding the dismissal of Plaintiff's state law claims and Defendant's counterclaim and declines to exercise its supplemental jurisdiction over those claims.

## V. Conclusion

ACCORDINGLY, the Court **ADOPTS** the Final Report and Recommendation of United States Magistrate Judge Walter E. Johnson [40], **OVERRULES** Plaintiff's Objections to the Final Report and Recommendation [41], **GRANTS** Defendant's Motion for Summary Judgment [30], and **DENIES** Plaintiffs Motion for Summary Judgment [31]. The Court **DECLINES** to exercise its supplemental jurisdiction over Plaintiff's state law claims and Defendant's state law counterclaim, and **DISMISSES THOSE CLAIMS WITHOUT PREJUDICE.** The Court **DIRECTS** the Clerk to close this case.

IT IS SO ORDERED.

### *FINAL REPORT AND RECOMMENDATION*

WALTER E. JOHNSON, United States Magistrate Judge.

Plaintiff/assignee, Bio–Medical Applications of Georgia, Inc., d/b/a/ BMA of Dalton ("BMA"), provided dialysis services to a participant (identified as the "Patient") in the City of Dalton, Georgia's Employee Health Benefit Plan (the "Plan").[1] The Complaint [1] alleges that the City's decision to terminate Patient's coverage under the Plan when he became eligible for Medicare benefits because of end stage renal disease ("ESRD") violated the Medicare as Secondary Payer ("MSP") Act, 42 U.S.C. § 1395y(b), entitling BMA to double damages under the Act's private cause

of action. (Compl. ¶¶ 1–18 and Count II). The Complaint also alleges various state law claims. (*Id.* Counts I, III–IV.) The City filed an Answer [8] denying liability and asserting a Counterclaim under state law for payments that it asserts were erroneously made to BMA on Patient's behalf.

Following referral of this matter to the undersigned [4] and a period of discovery, the parties filed cross-motions for summary judgment. For the reasons explained below, BMA has no private cause of action under the MSP Act; therefore, the undersigned **RECOMMENDS** that Defendant's Motion for Summary Judgment [30] be **GRANTED IN PART,** and that Plaintiff's Motion for Summary Judgment [31] be **DENIED.** The undersigned **FURTHER RECOMMENDS,** given the dismissal of the Complaint's only federal claim, that the District Court decline to exercise supplemental jurisdiction over plaintiff's remaining state law claims and defendant's state law counterclaim, and that such claims be **DISMISSED WITHOUT PREJUDICE.** Because of the extensive briefing provided here, Plaintiff's Request for Oral Argument [32] is **DENIED.**

## I. *STATEMENT OF FACTS*

In compliance with Local Rule 56.1(B)(1), both movants filed statements of what they contend are the undisputed material facts. (*See* Def.'s Statement of Material Facts as to Which There Are No Genuine Issues to be Tried [30–30] ("DSMF"); Pl.'s Statement of Material Facts as to Which There is No Genuine Issue to be Tried [31–34] ("PSMF").)

As required by Local Rule 56.1(B)(2)(a), both BMA and the City filed responses to the other's statement of material facts. (*See* Pl.'s Resp. to Def.'s Statement of

---

1. Plaintiff initially sued the Plan, but later amended to substitute the City as defendant.

(*See* Dec. 30, 2008 Consent Order [12].)

Material Facts as to Which There Are No Genuine Issues to be Tried [34] ("Pl.'s Resp. DSMF"); Def.'s Resp. to Pl.'s Statement of Material Facts as to Which There Are No Genuine Issues to be Tried [36] ("Def.'s Resp. PSMF").) In those responses, both BMA and the City admitted certain of the opposing movant's factual assertions. (*See* Pl.'s Resp. DSMF ¶¶ 2–3, 5, 7, 10–12, 14–16, 18, 21, 23–27, 30–31, 33, 35–36, 38, 42–43; Def.'s Resp. PSMF ¶¶ 6, 8, 13, 15, 18, 21, 29, 33, 35–36, 40–42, 47.) The statements admitted by either party are accepted as undisputed for purposes of this Report and Recommendation ("R & R") and are included herein if material.

In some instances, a respondent denies a movant's proposed fact, asserts an objection, argues that a movant's fact is not supported by the citation provided, or claims that the proposed fact is immaterial. *See* N.D. Ga. R. 56.1(B)(2)(a)(2) (describing manner in which a respondent may dispute a movant's proposed facts). In those situations, the Court reviews the record, evaluates the denial or objection, and determines whether a material fact dispute exists. Because each party asserts that the undisputed material facts require entry of summary judgment in its favor, neither filed the statement of additional facts which the respondent contends are material and present a genuine issue for trial, as required by Local Rule 56.1(B)(2)(b).

As required by Local Rule 56.1(B)(1)(a), the Court has not considered proposed facts that are unsupported by record cites. (*See* DSMF ¶¶ 13, 17, 20, 22, 28; PSMF ¶ 37.) Finally, the Court has not included the following proposed facts, either be-

cause resolution of some legal issues rendered them immaterial or they were never material. (*See* DSMF ¶¶ 28–43; PSMF ¶¶ 3–4, 11–12, 16–17, 19, 22–32, 34, 43, 45.)

## A. *Patient's Retirement and the City's Plan*

Patient worked for the City until his retirement on May 7, 2004. (DSMF ¶ 2; Pl.'s Resp. DSMF ¶ 2; PSMF ¶ 13; Def.'s Resp. PSMF ¶ 13.) The Plan provides medical benefits to eligible participants, which includes certain retirees. (PSMF ¶¶ 14–15; Def.'s Resp. PSMF ¶¶ 14–15; *see also* Plan Doc. [30–5] 30–31.)[2] Retirees who opt to continue their health coverage under the Plan are required to make monthly contributions or their coverage will be terminated. (PSMF ¶ 18; Def.'s Resp. PSMF ¶ 18.)

The Plan states: "Retiree coverage may continue until the retired employee reaches age 65 or becomes eligible for Medicare coverage, which ever comes first." (DSMF ¶ 5; Pl.'s Resp. DSMF ¶ 5; PSMF ¶ 35; Def.'s Resp. PSMF ¶ 35.) Thus, the City contends that, under the above-quoted Plan provision, retired employees are entitled to health benefits until they become eligible for Medicare, at which point their benefits are terminated. (DSMF ¶ 4.)[3] GRI was the Plan's third-party administrator at all relevant times. (PSMF ¶¶ 20–21; Def.'s Resp. PSMF ¶¶ 20–21.)[4]

## B. *BMA's Provision of Dialysis Services to Patient*

■ Although plaintiff asserts that Patient has ESRD (*see* PSMF ¶ 1), defendant objects, arguing that the exhibits (i.e., medical records, forms, and letters) plain-

---

2. The Court overrules the City's objection to PSMF ¶ 14, but has modified the undisputed fact to reflect the Plan's terms.

3. Plaintiff concedes that the Plan contains the provision quoted in DSMF ¶ 5, but asserts

that the City's interpretation and/or application of that provision is illegal under the MSP Act. (Pl.'s Resp. DSMF ¶ 4.)

4. The Court overrules the City's objection to PSMF ¶ 20.

tiff cites fail to support that assertion. (Def.'s Resp. PSMF ¶ 1.) [5] Upon review of those exhibits, the Court agrees with the City. At most, these exhibits show that plaintiff received dialysis from BMA's facility, and that plaintiff's attorney sought payment for those treatments from the Plan. Nevertheless, because transplant or dialysis are currently the only treatments for ESRD, *see* http://www.nlm.nih.gov/medlineplus/print/ency/article/000500.htm (last visited Sept. 17, 2009), and it is undisputed that Patient was receiving dialysis, the Court assumes that he has ESRD and that this condition triggered his Medicare eligibility.[6]

Although the parties dispute when Patient first visited BMA, plaintiff provided medical treatment in the form of dialysis services to Patient from late-November 2004 or early-December 2004 through April 2007. (DSMF ¶ 1; Pl.'s Resp. DSMF ¶ 1; PSMF ¶ 5; Def.'s Resp. PSMF ¶ 5.) At his initial visit, Patient provided BMA with a copy of his health insurance card. (PSMF ¶ 2.) [7]

## C. *The Assignment of Benefits from Patient to BMA*

The Plan permits assignment of benefits. (PSMF ¶ 33; Def.'s Resp. PSMF ¶ 33.) On December 1, 2004, Patient signed a document entitled, "Fresenius Medical Care North America, Assignment of Benefits Form." (PSMF ¶ 8; Def.'s

Resp. PSMF ¶ 8.) That document provides in relevant part as follows:

> I hereby assign my [b]enefits to Facility, for services provided to me by Facility. . . .
>
> I hereby authorize Facility to submit claims, on my behalf, to the insurance company(s) listed on the copy of the current insurance card(s) I have provided to Facility, in good faith. . . .
>
> I hereby instruct and direct my insurance company(s), to pay Facility directly. . . .
>
> This is a direct assignment of my rights and benefits under this policy. . . .
>
> . . . I authorize Facility to be my personal representative, which allows facility to: (1) submit any and all appeals when my insurance company denies benefits to which I am entitled, (2) submit any and all requests for benefit information from my insurance company, and (3) initiate formal complaints to any State or Federal agency that has jurisdiction over my benefits. . . . This assignment shall remain in effect until revoked by me in writing.

(Pl.'s Ex. 1 [31–2].)

The assignment contract on which plaintiff relies to bring its derivative action defines the assignee as "Facility," which is then further defined as "FMCNA Dalton Dialysis d/b/a Dalton Dialysis." (DSMF ¶ 14; Pl.'s Resp. DSMF ¶ 14.) [8] Although

---

**5.** The City also objects to the exhibits as inadmissible hearsay. (Def.'s Resp. PSMF ¶ 1.) Inadmissible hearsay cannot be considered in ruling on a motion for summary judgment unless it can be reduced to admissible evidence at trial. *See Macuba v. DeBoer*, 193 F.3d 1316, 1322–23 (11th Cir.1999). The exhibits cited by plaintiff are of the type that could be reduced to admissible evidence at trial. For example, some of them appear to be business records, admissible through testimony of a records custodian. *See* Fed. R.Evid. 803(6). Thus, the Court has considered these exhibits, but as noted in the text

preceding this note, they do not show definitively that Patient has ESRD.

**6.** Because the Court recommends entry of summary judgment against plaintiff's MSP Act claim, these assumptions do not prejudice defendant.

**7.** Defendant's objection to this proposed fact (Def.'s Resp. PSMF ¶ 2) is unfounded. BMA's proposed facts can be gleaned from Patient's insurance card.

**8.** A second document Patient signed on December 1, 2004, entitled "Fresenius Medical

plaintiff claims that the assignment contract identifies BMA as FMCNA Dalton Dialysis d/b/a Dalton Dialysis (PSMF ¶ 9), defendant correctly points out that the assignment contract makes no mention of BMA. (Def.'s Resp. PSMF ¶ 9.) Indeed, plaintiff concedes that BMA is not named as assignee on the assignment contract. (DSMF ¶ 15; Pl.'s Resp. DSMF ¶ 15.) Plaintiff is not registered as doing business under the fictitious names of "FMCNA Dalton Dialysis" or "Dalton Dialysis" in Whitfield County or in Fulton County, the location of its registered agent. (DSMF ¶ 16; Pl.'s Resp. DSMF ¶ 16.) Neither "FMCNA Dalton Dialysis" nor "Dalton Dialysis" is registered as a legal entity with the Georgia Secretary of State. (DSMF ¶ 18; Pl.'s Resp. DSMF ¶ 18.)

Plaintiff claims that Patient assigned his Plan benefits to BMA in exchange for receipt of medical services by signing the assignment contract. (PSMF ¶ 7.) Defendant objects, asserting that this proposed statement of fact constitutes a legal conclusion. (Def's Resp. PSMF ¶ 7.) The Court agrees. *See* N.D. Ga. R. 56.1(B)(1)(c). Defendant committed a similar mistake by asserting that the above contract fails to assign the right to sue for recovery of medical benefits. (DSMF ¶ 19.) Plaintiff properly objects to this

statement as a legal conclusion. (Pl.'s Resp. DSMF ¶ 19.) The Court finds it unnecessary to resolve this dispute over the validity of the assignment contract, but assumes for purposes of this R & R that plaintiff has standing to sue as Patient's assignee.[9]

### D. Patient's Eligibility for Medicare and the City's Response

Patient became eligible for Medicare benefits on November 1, 2004. (PSMF ¶ 6; Def.'s Resp. PSMF ¶ 6.) However, the City did not discover that Patient had become eligible for Medicare benefits until about February 2006. (PSMF ¶ 36; Def.'s Resp. PSMF ¶ 36; DSMF ¶ 6; Pl.'s Resp. DSMF ¶ 6 (admitting that City became aware of Patient's Medicare eligibility, but asserting that the exact date it became aware is immaterial).) In the meantime, the City made payments to plaintiff for dialysis treatments provided to Patient from December 16, 2004, to October 7, 2005, in the amount of $90,172.12. (DSMF ¶ 3; Pl.'s Resp. DSMF ¶ 3.)

After learning of Patient's Medicare eligibility, the City ceased payments to plaintiff and retro-terminated Patient's coverage back to November 1, 2004. (DSMF ¶ 7; [10] *see also* PSMF ¶¶ 38–39.[11]) The City made this decision to retro-terminate

Care NA Admission Agreement," reflects the "d/b/a" of "FMCNA Dalton Dialysis" and "Dalton Dialysis." (Pl.'s Ex. 29 [31–30].) A third document Patient signed on October 20, 2005, also captioned "Fresenius Medical Care NA Admission Agreement," reflects a "d/b/a" for "FMC–NA Dalton." (Pl.'s Ex. 30 [31–31].) Neither of these two documents purports to be an assignment contract.

9. Because the Court recommends entry of summary judgment against plaintiff's MSP Act claim, this assumption does not prejudice defendant.

10. Plaintiff admits that the City retro-terminated Patient's benefits effective November 1, 2004, but argues that, because DSMF ¶ 7 is supported by a citation to a pleading (i.e.,

Compl. ¶ 1) rather than to evidence, this fact should not be considered under the Local Rules. (*See* Pl.'s Resp. DSMF ¶ 7.) The Court cannot consider a proposed statement of material fact that is "(b) supported by a citation to a pleading rather than to evidence" N.D. Ga. R. 56.1(B)(1). This Rule prevents a movant from relying on his own pleadings to support a proposed fact. It does not prohibit a movant from relying upon his opponent's pleadings. Indeed, defendant's reliance on a fact alleged by plaintiff constitutes an admission. *See* Fed.R.Civ.P. 8(b)(1)(B). Rule 56 allows the Court to consider admissions. *See id.* 56(c). Thus, the Court accepts DSMF ¶ 7 as undisputed.

11. The Court overrules defendant's objections to PSMF ¶¶ 38–39.

Patient's benefits based on the written terms of the Plan. (PSMF ¶ 41; Def.'s Resp. PSMF ¶ 41.) The City also reimbursed Patient for all premiums he had paid after discontinuation of his health benefits under the Plan. (DSMF ¶ 8.)[12] The City mailed a check to Patient in the amount of $2,910, representing premiums he had paid for Plan coverage from November 1, 2004, through February 2006. (PSMF ¶ 40; Def.'s Resp. PSMF ¶ 40.) Plaintiff continued to provide dialysis treatments to Patient until on or about April 2007. (DSMF ¶ 9; Pl.'s Resp. DSMF ¶ 9.)[13] On May 1, 2007, Medicare became the primary payer for Patient's dialysis. (*See* Morris Decl. [31–33] ¶ 9.)

### E. *The Competing Claims for Payment and Refund*

In February and March 2006, the City sent letters to BMA requesting reimbursement for payments made on Patient's behalf. (DSMF ¶ 12; Pl.'s Resp. DSMF ¶ 12.) The City sought $86,572.12, which was the amount it paid BMA between December 16, 2004, and October 7, 2005. (PSMF ¶ 47; Def.'s Resp. PSMF ¶ 47.)

Beginning in April 2006, BMA appealed the Plan's decision, asserting that because

12. The Court modified defendant's proposed fact to accommodate plaintiff's objections. (*See* Pl.'s Resp. DSMF ¶ 8.)

13. The Court deems DSMF ¶ 9 admitted, because the City supported its proposed fact with a citation to the Complaint (¶ 12.) *See supra* note 10.

14. Plaintiff claims that the City knew that Patient became Medicare eligible because of ESRD. (PSMF ¶ 46.) However, as defendant correctly points out, the documents plaintiff cites to support that contention fail to show the City's awareness. At most, they show the City's response to plaintiff's contention that Patient had ESRD. (*See* Def.'s Resp. PSMF ¶ 46.) In any event, as noted above, the Court assumes that Patient has ESRD and that it triggered his Medicare eligibility.

Patient's Medicare eligibility was based on ESRD, termination of his coverage violated the MSP Act. (PSMF ¶ 42; Def.'s Resp. PSMF ¶ 42.)[14] By letter dated August 28, 2006, the City notified BMA that its appeal was denied. (PSMF ¶ 44.)[15]

Plaintiff alleges that the outstanding balance for medical benefits it provided to Patient is $690,382.15, and that the Plan has refused to pay that sum. (Compl. ¶¶ 15–18.) Plaintiff did not at any time relevant to this suit submit Patient's medical bills to Medicare. (DSMF ¶¶ 10, 21; Pl.'s Resp. DSMF ¶¶ 10, 21.)

### F. *Patient's Coverage Under Another Plan*

After the City terminated Patient's retiree coverage under the Plan, he enrolled in a health plan sponsored by his spouse's employer, Shaw Industries, effective February 17, 2006. (Morris Decl. [31–33] ¶ 7.) Shaw's third-party administrator, Acordia National, was primary payer for Patient's dialysis treatments from February 17, 2006, through April 30, 2007. (*Id.*) Plaintiff submitted medical bills to, and received payments from, Acordia National for services it provided to Patient. (DSMF ¶ 11; Pl.'s Resp. DSMF ¶ 11.)[16]

15. Defendant's objection that PSMF ¶ 44 is immaterial (*see* Def.'s Resp. PSMF ¶ 44) is overruled.

16. The Complaint alleges that the outstanding balance for medical services provided to Patient over the 30–month period for which the Plan should have been primary payer (November 1, 2004, through April 30, 2007) is $690,382.15. It is difficult to see how the balance could be that large. The City was primary payer for Patient's dialysis services from December 2, 2004, through October 31, 2005. (Morris Decl. ¶ 5.) The City's cost for that initial 12–month period was about $86,000 (or $7,166 per month). Because of the City's cancellation of Patient's coverage, plaintiff received no payments for about three and one-half months, or between October 31, 2005, and February 17, 2006. Acordia/Shaw

## II. SUMMARY JUDGMENT STANDARD

Summary judgment shall be "rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party moving for summary judgment bears the initial burden of "informing the court of the basis for its motion and of identifying those materials that demonstrate the absence of a genuine issue of material fact." *Rice–Lamar v. City of Fort Lauderdale, Fla.*, 232 F.3d 836, 840 (11th Cir.2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986)). "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991).

The non-moving party then "may not rely merely on allegations or denials in its own pleading; rather, its response must— by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial." Fed.R.Civ.P. 56(e)(2); *see also Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553 (non-movant then required "to go beyond the pleadings" and present competent evidence in form of affidavits, depositions, admissions and the like, designating "specific facts showing that there is a genuine issue for trial"). Generally, "[t]he mere existence of a scintilla of evidence" supporting the non-movant's case is insufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). If in response the non-moving party does not sufficiently support an essential element of her case as to which she bears the burden of proof, summary judgment is appropriate. *Rice–Lamar*, 232 F.3d at 840. "In determining whether genuine issues of material fact exist, [the Court] resolve[s] all ambiguities and draw[s] all justifiable inferences in favor of the non-moving party." *Id.* (citing *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513): *see also Hammer v. Slater*, 20 F.3d 1137, 1141 (11th Cir.1994) ("Once the moving party has met its initial burden by negating an essential element of the non-moving party's case, the burden on summary judgment shifts to the non-moving party to show the existence of a genuine issue of material fact. For issues on which the non-moving party will bear the burden of proof at trial, the non-moving party must either point to evidence in the record or present additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." (citation and quotation marks omitted)).

In deciding a summary judgment motion, the court's function is not to resolve issues of material fact, but rather to determine whether there are any such issues to be tried. *Anderson*, 477 U.S. at 251, 106 S.Ct. at 2511–12. The applicable substantive law will identify those facts that are material. *Id.* at 248, 106 S.Ct. at 2510. Facts that are disputed, but which do not affect the outcome of the case, are not material and thus will not preclude the entry of summary judgment. *Id.* Genuine disputes are those in which "the evidence is such that a reasonable jury could return

then became the primary payer for the next 14 months, or until Medicare assumed primary responsibility on May 1, 2007. BMA thus received money from a primary payer (either the City or Acordia/Shaw) for about 26 of the 30–month coordination period. BMA may only be owed for three and one-half months of dialysis treatments (or about $25,000).

a verdict for the nonmoving party." *Id.* For factual issues to be "genuine," they must have a real basis in the record. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). When the record as a whole could not lead a rational trier of fact to find for the non-movant, there is no "genuine issue for trial." *Id.* at 587, 106 S.Ct. at 1356.

Cross-motions for summary judgment do not change the above standard. *Latin Am. Music Co. v. Archdiocese of San Juan of the Roman Catholic & Apostolic Church*, 499 F.3d 32, 38 (1st Cir.2007). Rather, "a court must consider each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Warshauer v. Chao*, No. 4:06–CV–0103–HLM, 2008 WL 2622799, at *24 (May 7, 2008) (internal citations and quotations omitted). "Both motions must be denied if there is a genuine issue of material fact. But if there is no genuine issue and one or the other party is entitled to prevail as a matter of law, the court will render judgment." 10A Charles Alan Wright et al., *Federal Practice & Procedure* § 2720 (3d ed. 2009).

## III.  ANALYSIS

### A.  *Plaintiffs Claims*

Plaintiff alleges that the City violated the MSP Act when it took Patient's ESRD into account in terminating his coverage under the Plan. It thus seeks to recover double damages for that alleged violation under that Act's private cause of action, 42 U.S.C. § 1395y(b)(3)(A). (Compl. Count

II.) This is the only claim in the Complaint arising under federal law.

In a cryptic Count I, oddly titled "Claim for Benefits By the Plan," plaintiff incorporates by reference the Complaint's preceding paragraphs (Compl. ¶ 19) and alleges only that "[t]he medical expenses are covered and all prerequisites met in accordance with the Plan." (*Id.* ¶ 20.) Count I does not allege the City's violation of any federal statute.[17] The City believes that Count I arises under state law (Def.'s Br. [30–2] 31), and plaintiff concurs (Pl.'s Resp. Br. [35] 35 n.13.) The undersigned agrees that Count I asserts a violation of state law.

Counts III and IV of the Complaint are clearly brought under state law. In Count III, plaintiff alleges a violation of the duty to exercise good faith pursuant to O.C.G.A. § 33–4–6, when the Plan refused to pay for a loss covered under an insurance policy. (Compl. Count III.) Count IV alleges violation by the Plan of the prompt payment provisions of O.C.G.A. § 33–24–59.5. (*Id.* Count IV.)

In the following Part III.B.1, the Court reviews the background and statutory scheme of the MSP Act. In Parts III.B.2 and III.B.3, respectively, the Court addresses plaintiff's private cause of action under the MSP Act and recommends alternate grounds for entry of summary judgment for defendant. Finally, in Part III.C, the undersigned recommends that the District Court not exercise supplemental jurisdiction over plaintiff's remaining state law claims and defendant's state law counterclaim.

---

**17.** The Plan is a "governmental plan" as that term is defined in the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1002(32). (Compl. ¶ 4; Ans. ¶ 4.) As such, the provisions of subchapter I of ERISA (titled "protection of employee benefit rights") do not apply. See 29 U.S.C. § 1003(b); *see also Brett v. Jefferson County. Ga.*, 123 F.3d 1429, 1435 (11th Cir.1997) (ERISA excludes public employees covered by government health plans from its employee benefit plan provisions). Thus, the Complaint contains no federal claim under ERISA's civil enforcement provision, 29 U.S.C. § 1132(a).

**B.** *Plaintiffs Private Cause of Action Under the MSP Act*

**1.** *MSP Act's Background and Statutory Scheme*

The Medicare system federally funds healthcare for three categories of individuals: (1) the aged, (2) the disabled, and (3) those with ESRD. *National Renal Alliance, LLC v. Blue Cross and Blue Shield of Ga., Inc.*, 598 F.Supp.2d 1344, 1351 (N.D.Ga.2009). Many of those persons are also covered under private group health insurance plans. *Id.* Before 1981, coverage under Medicare was generally "primary" to any applicable private group health insurance plan. *Harris Corp. v. Humana Health Ins. Co. of Fla.*, 253 F.3d 598, 600 (11th Cir.2001). In response to rising Medicare costs, Congress enacted a series of amendments designed to make Medicare "secondary" to that private coverage.[18] *Id.; see also United States v. Travelers Ins. Co.*, 815 F.Supp. 521, 522 (D.Conn.1992) (Congress enacted the MSP Act "in an effort to reduce federal spending and to protect the financial well being of the Medicare program."). "Those amendments are codified at 42 U.S.C. § 1395y(b), and are referred to as the Medicare as Secondary Payer Act." *National Renal*, 598 F.Supp.2d at 1351.

The opening provision of the Act, section 1395y(b)(1), is titled, "Requirements of group health plans." It imposes obligations upon certain plans with regard to the aged, the disabled, and those with ESRD. Given the allegations of this case, the relevant paragraph is 1395y(b)(1)(C), which provides as follows:

(C) Individuals with end stage renal disease

A group health plan (as defined in subparagraph (A)(v)[19])—

(i) may not take into account that an individual is entitled to or eligible for benefits under this subchapter under section 426–1[20] of this title during the 12–month period which begins with the first month in which the individual becomes entitled to benefits under part A under the provisions of section 426–1 of this title, or, if earlier, the first month in which the individual would have been entitled to benefits under such part under the provisions of section 426–1 of this title if the individual had filed an application for such benefits; and

(ii) may not differentiate in the benefits it provides between individuals having end stage renal disease and other individuals covered by such plan on the basis of the existence of end stage renal disease, the need for renal dialysis, or in any other manner;

---

**18.** Making Medicare "secondary" means "that if payment for covered services has been or is reasonably expected to be made by someone else, Medicare does not have to pay." *Cochran v. U.S. Health Care Fin. Admin.*, 291 F.3d 775, 777 (11th Cir.2002).

**19.** Section (A)(v) provides as follows: "In this subparagraph, and subparagraph (C), the term 'group health plan' has the meaning given such term in section 5000(b)(1) of the Internal Revenue Code of 1986, without regard to section 5000(d) of Title 26." 42 U.S.C. § 1395y(b)(1)(A)(v). That provision of the IRC defines the term "group health plan" to mean "a plan (including a self-insured plan) of, or contributed to by, an employer (including a self-employed person) or employee organization to provide health care (directly or otherwise) to the employees, former employees, the employer, others associated or formerly associated with the employer in a business relationship, or their families." 26 U.S.C. § 5000(b)(1). 26 U.S.C. § 5000(d) excludes the federal government or other governmental entities from the above-quoted definition of an employer.

**20.** Section 426–1 is Medicare's ESRD program. *See* 42 U.S.C. § 426–1.

except that clause (ii) shall not prohibit a plan from paying benefits secondary to this subchapter when an individual is entitled to or eligible for benefits under this subchapter under section 426–1 of this title after the end of the 12–month period described in clause (i). . . . Effective for items and services furnished on or after August 5, 1997, . . . clauses (i) and (ii) shall be applied by substituting "30–month" for "12–month" each place it appears.

42 U.S.C. § 1395y(b)(1)(C). The MSP Act thus prohibits a group health plan from "taking into account" the fact that an individual has ESRD or "differentiating" in benefits for that individual for the 30 months after Medicare entitlement or eligibility.[21]

Regulations implementing the MSP Act provide further explanation of these two terms. For example, Section 411.108 describes what "taking into account" the Medicare entitlement or eligibility of a person with ESRD means for group health plans (GHP) or large group health plans (LGHP):

(a) Examples of actions that constitute "taking into account". Actions by GHPs or LGHPs that constitute taking into account that an individual is entitled to Medicare on the basis of ESRD, age, or disability (or eligible on the basis of ESRD) include, but are not limited to, the following:

(1) Failure to pay primary benefits as required by subpart[ ] F . . . of this part 411.

. . . .

(3) Terminating coverage because the individual has become entitled to Medicare, except as permitted under COBRA continuation coverage provisions. . . .

42 C.F.R. § 411.108(a) (2009).

Similar regulations in Subpart F (dealing with ESRD) provide as follows regarding "taking into account" and "differentiation":

(a) Taking into account—

(1) Basic rule. A GHP may not take into account that an individual is eligible for or entitled to Medicare benefits on the basis of ESRD during the coordination period specified in § 411.162(b) and (c). Examples of actions that constitute taking into account Medicare entitlement are listed in § 411.108(a).

. . . .

(b) Nondifferentiation.

(1) A GHP may not differentiate in the benefits it provides between individuals who have ESRD and others enrolled in the plan, on the basis of the existence of ESRD, or the need for renal dialysis, or in any other manner.

(2) GHP actions that constitute differentiation in plan benefits (and that may also constitute "taking into account" Medicare eligibility or entitlement) include, but are not limited to the following:

(i) Terminating coverage of individuals with ESRD, when there is no

---

**21.** When a person with ESRD is covered both under Medicare and a group health plan, Medicare is secondary with respect to benefits payable to him during the "coordination period." *See* 42 C.F.R. § 411.162(a) (2009). The regulations have not been updated to reflect the longer 30–month coordination period required by the MSP Act. *See id.* §§ (a)-(c) (providing maximum coordination period of 18 months). However, the agency responsible for administering Medicare, the Centers for Medicare & Medicaid Services, has updated its materials and mandates the statutory 30–month coordination period. *See* Medicare Secondary Payer (MSP) Manual, Chapter 2—MSP Provisions, Section 20 (available at http://www.cms.hhs.gov/manuals/downloads/mspl05c02.pdf) (last visited Sept. 17, 2009).

basis for such termination unrelated to ESRD (such as failure to pay plan premiums) that would result in termination for individuals who do not have ESRD.

42 C.F.R. § 411.161(a)-(b) (2009). *See also id.* § 411.102(a)(1) (providing that a GHP may not take into account the ESRD-based Medicare eligibility or entitlement of any individual covered under the plan, and may not differentiate in the benefits it provides between individuals with ESRD and other individuals covered under the plan, on the basis of the existence of ESRD).

Although Medicare may be secondary, in certain situations, when no primary payer is expected to pay promptly (i.e., within 120 days under 42 C.F.R. § 411.21 (2009)), it may pay conditionally, with the expectation that the primary payer will reimburse Medicare upon a determination of its obligation to pay. *See* 42 U.S.C. § 1395y(b)(2)(B)(i)-(ii): *see also Glover v. Liggett Group, Inc.,* 459 F.3d 1304, 1306 (11th Cir.2006). Under the regulations, when an individual eligible or entitled to Medicare benefits on the basis of ESRD also has coverage under a group health plan, Medicare "may make a conditional payment if—(1) The beneficiary, the provider, or the supplier that has accepted assignment files a proper claim under the group health plan and the plan denies the claim in whole or in part[.]" 42 C.F.R. § 411.165(a)(1) (2009). However, Medicare will not make conditional primary payments when the claim is denied because that group health plan contends that it is secondary to Medicare. *Id.* § 411.165(b)(1)(i).[22]

To facilitate reimbursement for those conditional payments, the MSP Act authorizes the United States to sue a delin-quent primary payer for double damages. *See* 42 U.S.C. § 1395y(b)(2)(B)(iii): *see also United States v. Baxter Int'l, Inc.,* 345 F.3d 866, 875 (11th Cir.2003) ("Medicare is empowered to recoup from the rightful primary payer (or from the recipient of such payment) if Medicare pays for a service that was, or should have been, covered by the primary insurer.").

The MSP Act also establishes "a private cause of action for damages (which shall be in an amount double the amount otherwise provided) in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement) in accordance with paragraphs (1) and (2)(A)." 42 U.S.C. § 1395y(b)(3)(A). This is the provision under which BMA is proceeding here.

If a party bringing a private cause of action is successful, "The United States shall be subrogated (to the extent of payment made under this subchapter for such an item or service) to any right under this subsection of an individual or any other entity to payment with respect to such item or service under a primary plan." 42 U.S.C. § 1395y(b)(2)(B)(iv). *See also Frazer v. CNA Ins. Co.,* 374 F.Supp.2d 1067, 1077 (N.D.Ala.2005) ("The statute provides that a private litigant who recovers a reimbursement for claims paid by Medicare and which have been denied by an insured defendant is required to turn over the amounts of such claim to the government."). The recovery of double damages allows the government to recoup its Medicare costs and provides a bounty to the plaintiff. *Id.* at 1080; *accord Stalley v. Catholic Health Initiatives,* 509 F.3d 517, 525 (8th Cir.2007) ("[W]ith the private right of action and the double damages, the beneficiary can pay back the govern-

---

**22.** Contrary to plaintiff's claims (Pl.'s Resp. Br. 31–32), Medicare could have made conditional payment here because the Plan denied the claims for lack of coverage, not because it claimed it was secondary to Medicare.

ment for its outlay and still have money left over to reward him for his efforts.").

With this background and overview of the MSP Act in mind, the Court turns to the alternate reasons why, under the undisputed facts of this case, BMA's private cause of action against the City fails.

### 2. Plaintiffs Private Cause of Action Under the MSP Act Fails Because Medicare Has Paid No Claims

There is little legislative history behind the MSP Act's private cause of action for double damages. *National Renal*, 598 F.Supp.2d at 1354. In *Stalley v. Catholic Health Initiatives*, 509 F.3d 517, the Eighth Circuit analyzed the limited legislative history and comments from other cases to glean the following about the purpose of the private cause of action:

> The parties do not point us to any legislative history explaining the purpose of the private right of action, nor have we found any legislative history directly explaining how the private right was meant to work. *See* H.R. Conf. Rpt. No. 99–1012, at 321 (1986), reprinted in 1986 U.S.C.C.A.N. 3868, 3966 (merely stating that the private right of action is "to enforce the provision for the aged"); S. Rpt. No. 99–348, at 140 (1986) (stating that obligation of primary payers "would be enforceable by private action or by the Federal Government"). Courts considering the provision have generally agreed that the apparent purpose of the statute is to help the government recover conditional payments from insurers or other primary payers. *See, e.g., United Seniors [Ass'n v. Philip Morris USA]*, 500 F.3d [19,] 21–22 [ (1st Cir. 2007) ] ("To facilitate recovery of these conditional payments, the MSP ... (iii) creates a private cause of action with

double recovery to encourage private parties to bring actions to enforce Medicare's rights.") (citation omitted); *Manning [v. Utils. Mut. Ins. Co., Inc.]*, 254 F.3d [387,] 396–97 & n. 8 [ (2d Cir. 2001) ] ("The history of the MSP legislation is consistent with our view that the private right of action was created to save money for the Medicare system."); *Frazer*, 374 F.Supp.2d at 1077 ("The legislation's incentive to bring a private lawsuit is clearly based in turn upon the subrogation right of the government to obtain a portion of the recovery. The recovery of costs by Medicare is the primary purpose of the MSP."); *see also Harris Corp. v. Humana Health Ins. Co.*, 253 F.3d 598, 606 (11th Cir.2001) (per curiam) ("A private cause of action for double damages ... serves Congress' interest in the fiscal integrity of the Medicare program by deterring private insurers primary to Medicare under the statute from attempting to lay medical costs at the government's doorstep."). This is consistent with inclusion of the provision in The Omnibus Budget Reconciliation Act of 1986, which was intended to reduce government spending. *See* Statement by President of the United States, 22 Weekly Compilation of Presidential Documents 1421 (Oct. 27, 1986), reprinted in 1986 U.S.C.C.A.N. 4073–74. Additionally, as the Second Circuit pointed out in *Manning*, 254 F.3d at 397 n. 8, when Senator David Durenburger introduced the President's Medicare proposals for 1986, which included the private right of action, he referred to the proposals as "health care cost reduction proposals." 132 Cong. Rec. 21935 (Aug. 15, 1986).[23]

The thinking behind the statute is apparently that (1) the beneficiary can be

---

**23.** *Manning* also concluded that "[t]his statement [by Senator Durenburger] supports the intent we glean from the language of the [MSP] statute—to save the government money

by giving private citizens incentives to recover funds erroneously paid by Medicare." *Manning*, 254 F.3d at 397 n. 8.

expected to be more aware than the government of whether other entities may be responsible to pay his expenses; (2) without the double damages, the beneficiary might not be motivated to take arms against a recalcitrant insurer because Medicare may have already paid the expenses and the beneficiary would have nothing to gain by pursuing the primary payer; and (3) with the private right of action and the double damages, the beneficiary can pay back the government for its outlay and still have money left over to reward him for his efforts. *Id.* at 524–25.[24]

Given that the purpose of the private cause of action is to save the government money by giving private citizens incentive to recover funds erroneously paid by Medicare, courts agree that "a MSP ' double damages' claim may be maintained only where Medicare has, in fact, paid claims that a primary insurer should have, but refused, to pay." *Leggette et al. v. B.V. Hedrick Gravel & Sand Co. et al.*, Case No. 3:04–CV–00530–CH, at *19 (W.D.N.C. May 24, 2006) (copy filed as Def.'s Ex. R [30–28] ).[25] *See also Manning*, 254 F.3d at 391–92 ("Congress has authorized a private cause of action and double damages against entities designated as primary payers that fail to pay for medical costs for which they were responsible, which are borne in fact by Medicare."); *National Renal*, 598 F.Supp.2d at 1354 (recognizing private cause of action where Medicare paid for medical treatment); *Woods v. Empire Health Choice, Inc.*, No. 05–CV–0577 (DLI)(LB), 2007 WL 2406876, at *2

(E.D.N.Y. Aug. 20, 2007) (" § 1395y(b)(3)(A) allows 'individuals whose medical bills are improperly denied by insurers and instead paid by Medicare' to bring suit, and 'the government is subrogated to the right of the private citizen for the recovery of such funds.' ") (quoting *Manning*, 254 F.3d at 394); *Glover v. Philip Morris USA*, 380 F.Supp.2d 1279, 1282 (M.D.Fla.2005) ("The MSP also contains a private right of action which gives private citizens an incentive to aid the government in recovering 'funds erroneously paid by Medicare.' ") (quoting *Manning*, 254 F.3d at 397 n. 8), *aff'd*, 459 F.3d 1304 (11th Cir.2006); and *Frazer*, 374 F.Supp.2d at 1078 ("The consensus of reported cases is that 'a private cause of action and double damages against entities designated as primary payers that fail to pay for medical costs for which they are responsible, *which are borne in fact by Medicare.*' ") (quoting *Manning*, 254 F.3d at 391–92) (emphasis added in *Frazer*).

It is undisputed that Medicare has not paid any claims for Patient's dialysis. BMA instead submitted its bills first to the City's Plan and then to Acordia/Shaw. *See supra* note 16 and accompanying text. Under the above-cited authorities, in the absence of any payments by Medicare, BMA cannot maintain a private cause of action against the City under the MSP Act. Accordingly, defendant's motion for summary judgment on plaintiff's private cause of action under the MSP Act should be **GRANTED,** and plaintiff's motion for summary judgment on that claim should be **DENIED.**[26]

---

**24.** The Eleventh Circuit agreed with the reasoning and holding in *Stalley* in *Stalley v. Orlando Regional Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir.2008) (per curiam).

**25.** A company related to BMA was the plaintiff in *Leggette*. They are represented by the same counsel. (DSMF ¶ 24; Pl.'s Resp. DSMF ¶ 24.) The unfavorable *Leggette* deci-

sion was not appealed. (Pl.'s Resp. Br. 22 n. 6.)

**26.** Dicta in *Harris Corp.*, 253 F.3d at 605–06, suggests that the private cause of action for double damages would be available if an individual's only private insurer denied a claim for benefits based solely on that individual's eligibility for Medicare. (Pl.'s Resp. Br. 11.)

### 3. Plaintiff's Private Cause of Action Under the MSP Act Fails For Failure to Demonstrate the Plan's Obligation to Make Payment

As noted above, "[a]lthough Medicare has authority to make payments for the medical costs of its beneficiaries whether or not other coverage exists, *see* 42 U.S.C. § 1395y(b)(2)(B)(i) ('Authority to make conditional payment'), the MSP Act establishes the basic obligation of primary carriers, if they exist, to reimburse Medicare for any conditionally advanced expenditures." *Nat'l Comm. to Preserve Soc. Sec. and Medicare v. Philip Morris USA, Inc.*, 601 F.Supp.2d 505, 507 (E.D.N.Y.2009). The obligation to reimburse is triggered upon "demonstration" that the primary plan is responsible for those payments, as follows:

> A primary plan, and an entity that receives payment from a primary plan, shall reimburse the appropriate Trust Fund for any payment made by the Secretary ... if it is demonstrated that such primary plan has or had a responsibility to make payment with respect to such item or service.

42 U.S.C. § 1395y(b)(2)(B)(ii). The MSP Act describes how that responsibility may be demonstrated:

> A primary plan's responsibility for such payment may be demonstrated by a judgment, a payment conditioned upon the recipient's compromise, waiver, or release (whether or not there is an admission of liability) of payment for items or services included in a claim against

the primary plan or the primary plan's insured, or by other means.

42 U.S.C. § 1395y(b)(2)(B)(ii).

As also discussed above, a primary plan that fails to pay or reimburse is subject to suit for double damages by the United States (*see* 42 U.S.C. § 1395y(b)(2)(B)(iii)) or by a private party (*see id.* § 1395y(b)(3)(A)), with the government having a right of subrogation for the amount of its conditional payment against the private party's recovery. *See id.* § 1395y(b)(2)(B)(iii)-(iv). However, the "weight of the authority" holds that the MSP Act requires a primary plan to have a demonstrated obligation to pay *before* a private cause of action may arise. *National Committee*, 601 F.Supp.2d at 509: *accord Bio–Medical Applications of Tenn., Inc. d/b/a BMA of Kingsport individually and as Assignee of Patient v. Central States, Se. and Sw. Areas Health and Welfare Fund*, No. 2:08–CV–228, 2008 WL 5110800, at *1, 2008 U.S. Dist. LEXIS 97748, at *4 (E.D.Tenn. Dec. 1, 2008)[27]; *Stalley v. Erlanger Health Sys.*, No. 1:06–CV–194, 2007 WL 672301, at *5 (E.D.Tenn. Feb. 28, 2007); *Stalley v. Sumner Reg'l Health Sys., Inc.*, No. 2:06–0074, 2007 WL 173686, at *6–7 (M.D.Tenn. Jan. 18, 2007): and *Fresenius Med. Care Holdings, Inc. et al. v. Brooks Food Group, Inc. et al.*, No. 3:07CV14–H, 2007 WL 2480251, at *7–8, 2007 U.S. Dist. LEXIS 63618, at *21–23 (W.D.N.C. Aug. 28, 2007).[28]

The leading case on this issue is the Eleventh Circuit's opinion in *Glover*, 459 F.3d 1304, where the court held that the

However, other language in the opinion supports the view held by the cases cited in the preceding text that the fiscal integrity of the Medicare program must be at stake before a private cause of action arises under the MSP Act. *Harris Corp.*, 253 F.3d at 605–06 n. 5.

**27.** The actual spelling of that plaintiff's name, which is related to the plaintiff here, is "Bio–Medical." (DSMF ¶ 27; Pl.'s Resp. DSMF

¶ 27.) The undersigned cites a subsequent opinion (August 13, 2009) in that case at note 31, *infra*.

**28.** Plaintiff's counsel here filed that action on behalf of one of plaintiff's related companies. (DSMF ¶¶ 25–26; Pl.'s Resp. DSMF ¶¶ 25–26.) *Fresenius* is on appeal to the Fourth Circuit. (Pl.'s Resp. Br. [35] 22 n. 6.)

MSP Act makes it a condition precedent to reimbursement that there be a demonstrated responsibility to pay for the items or services. *Id.* at 1309. The court stated as follows:

> Until Defendants' responsibility to pay for a Medicare beneficiary's expenses has been demonstrated (for example, by a judgment), Defendants' obligation to reimburse Medicare does not exist under the relevant provisions. Therefore, it cannot be said that Defendants have "failed" to provide appropriate reimbursement. Based on this language, we conclude that an alleged tortfeasor's responsibility for payment of a Medicare beneficiary's medical costs must be demonstrated before an MSP private cause of action for failure to reimburse Medicare can correctly be brought under section 1395y(b)(3)(A).

*Id.*

*Glover* further reasoned that, without this condition precedent, "defendants would have no opportunity to reimburse Medicare *after* responsibility was established but before the penalty attached." *Glover*, 459 F.3d at 1309. "To hold otherwise would open a primary insurer to double damages each time it contests a claim, rather than only when it fails to pay after responsibility has been established." *Fresenius*, 2007 WL 2480251, at *8, 2007 U.S. Dist. LEXIS 63618, at *22–23. Because the City's responsibility for the contested payments for dialysis services has not yet been demonstrated, plaintiff has no private cause of action under the MSP Act.

Plaintiff argues that *Glover* should not apply here for two reasons. First, the private cause of action for double damages arises against "a primary plan which fails to provide for primary payment (or appropriate reimbursement) in accordance with paragraphs (1) and (2)(A)." 42 U.S.C. § 1395y(b)(3)(A). Because the statute only incorporates paragraphs (1) and

(2)(A), plaintiff argues that the Eleventh Circuit erred when it applied the "demonstrated by" language from paragraph (B)(ii). (Pl.'s Resp. Br. 33–35.)

Plaintiff's first argument is refuted by the statutory language. The two paragraphs referenced in the private cause of action provision, paragraphs (1) and (2)(A), are sections 1395y(b)(1) and 1395y(b)(2)(A), respectively. The Court summarized and quoted the relevant provisions of paragraph (1), § 1395y(b)(1), *supra*. Paragraph (2)(A), § 1395y(b)(2)(A), provides as follows:

> (2) Medicare secondary payer
>
> (A) In general
>
> Payment under this subchapter may not be made, except as provided in subparagraph (B), with respect to any item or service to the extent that—
>
>> (i) payment has been made, or can reasonably be expected to be made, with respect to the item or service as required under paragraph (1), or
>>
>> (ii) payment has been made or can reasonably be expected to be made under a workmen's compensation law or plan of the United States or a State or under an automobile or liability insurance policy or plan (including a self-insured plan) or under no fault insurance.
>
> In this subsection, the term "primary plan" means a group health plan or large group health plan, to the extent that clause (i) applies, and a workmen's compensation law or plan, an automobile or liability insurance policy or plan (including a self-insured plan) or no fault insurance, to the extent that clause (ii) applies. An entity that engages in a business, trade, or profession shall be deemed to have a self-insured plan if it carries its own risk (whether by a failure to obtain insurance, or otherwise) in whole or in part.

42 U.S.C. § 1395y(b)(2)(A). As can be seen in the above-quoted language, paragraph (2)(A) expressly directs one to subparagraph (B). *Glover's* application of the standards of paragraph (B)(ii), 42 U.S.C. § 1395y(b)(2)(B)(ii), was not in error.

Plaintiff's second argument against application of *Glover* is based on the fact that Medicare paid benefits in *Glover*, but none have been paid here. Thus, plaintiff asserts that *Glover* is inapposite because it is not making a claim seeking reimbursement of funds Medicare paid, but rather making a claim alleging that the Plan failed to pay its claims. (Pl.'s Resp. Br. 33–35.)

Plaintiff's second attempt to distinguish *Glover* fails as well. As noted above, *Glover* holds that, before filing suit under the MSP Act's private cause of action, a plaintiff must already be entitled to money from the alleged primary payer by virtue of a judgment, etc. As this Court held in *National Renal*, it matters not whether the plaintiff is suing for reimbursement for Medicare or for a plan's failure to pay:

> Under Medicare as a Secondary Payer Act, the group health plan's responsibility to make a reimbursement is established by "a judgment, a payment conditioned upon the recipient's compromise, waiver, or release (whether or not there is a determination or admission of liability) [i.e., a settlement], or by other means." 42 U.S.C. § 1395y(b)(2)(B)(ii); *see also Glover v. Liggett Group, Inc.*, 459 F.3d 1304, 1309 (11th Cir.2006) (per curiam). Plaintiffs assert they are positing a different type of claim because they are not seeking to enforce a primary plan's obligation to reimburse Medicare. Even if they were, Plaintiffs continue, Blue Cross's obligation to pay for out-of-network expenses is estab-

lished by the insureds' group health plans. For the purposes of the "demonstrated responsibility" to pay requirement, however, the court sees no reason to distinguish between a claim seeking reimbursement and a claim alleging that the insurer failed to pay claims.

*National Renal*, 598 F.Supp.2d at 1354 n. 5. The clear message is that the condition precedent of demonstrating an obligation to pay applies in either situation (i.e., reimbursement or payment) and bars plaintiff's private cause of action here. Accordingly, defendant's motion for summary judgment on plaintiff's private cause of action under the MSP Act should be **GRANTED**, and plaintiff's motion for summary judgment on that claim should be **DENIED**.

### 4. *The District Court Should Reject Plaintiffs Effort to Create an Implied Private Cause of Action Via a Declaratory Judgment*

Plaintiff argues that, even if this Court rejects its private cause of action under the MSP Act, it should nevertheless enter a declaratory judgment that the City's termination of Patient's coverage under the Plan when he developed ESRD violated 42 U.S.C. § 1395y(b)(1)(C). Plaintiff raised this argument in a footnote in its opening brief. (*See* Pl.'s Mem. [31–35] 21 n. 3.) [29] BMA elaborated on this argument in its Reply Brief, asking this Court to declare that the Plan is in violation of the MSP Act, to equitably reform the Plan's language to conform to the law, and to impose damages against the City in an amount double what it claims the Plan should have paid for Patient's dialysis. (*See* Pl.'s Reply [39] 4–5.)

The undersigned recommends that the District Court deny this declaratory after-

---

**29.** There is no count in the Complaint seeking a remedy under the federal Declaratory Judgment Act, 28 U.S.C. § 2201, or citing Fed. R.Civ.P. 57 (Declaratory Judgment). The Complaint's prayer for relief contains three subparts seeking various declarations. (Compl., Prayer for Relief, ¶¶ A–C.)

thought. *See Angora Enters., Inc. v. Condo. Ass'n of Lakeside Village, Inc.,* 796 F.2d 384, 387 (11th Cir.1986) ("whether to grant declaratory relief is a matter for the court's sound discretion"). Even if this Court were to declare the Plan in violation of the MSP Act, plaintiff still would not have a private cause of action because Medicare has paid no claims and plaintiff has not demonstrated defendant's responsibility for the contested payments. (*See supra* Parts III.B.2–3.) [30] Thus, plaintiff is actually asking for this Court to imply a private cause of action because the one created by Congress is not available. The Supreme Court directs that courts should be loath to imply a private remedy when Congress has created a governing statutory scheme. *See Alexander v. Sandoval,* 532 U.S. 275, 290, 121 S.Ct. 1511, 1521–22, 149 L.Ed.2d 517 (2001) ("The express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others."); *Transamerica Mortgage Advisors, Inc. (TAMA) v. Lewis,* 444 U.S. 11, 19, 100 S.Ct. 242, 247, 62 L.Ed.2d 146 (1979) ("[I]t is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it.").

The Eleventh Circuit followed this direction in *Christ v. Beneficial Corp.,* 547 F.3d 1292 (11th Cir.2008), when it held that, because the civil liability provisions of the Truth in Lending Act, 15 U.S.C.

§ 1640, reflect a comprehensive scheme of remedies, plaintiffs were precluded from implied equitable relief. 547 F.3d at 1298. That same reasoning applies here. Congress gave plaintiffs a private cause of action under the MSP Act (42 U.S.C. § 1395y(b)(3)(A)), which provides recovery in an amount double what Medicare paid. If, as noted above, Medicare has not paid, there is no private cause of action. The District Court should decline to create an implied private cause of action that goes beyond that created by Congress.

There are also important policy reasons that counsel against creation of the implied private cause of action plaintiff seeks. The City's Plan provides medical benefits to retirees in order to bridge the period between their last day of work and the day they become eligible for Medicare coverage (for any reason). Judicial reformation of the Plan would likely have consequences far beyond determination of legal rights as between the parties to the instant controversy. For example, if this Court imposed an unexpected, large liability for ESRD treatments upon the Plan in a situation not contemplated by the MSP Act, then the City and other local governments (who often self-fund these plans) might react by cancelling all retiree coverage. This may not be the best public policy outcome. Thus, balancing whether a medical service provider like BMA should recover funds or whether early retirees should retain their insurance coverage in a situation presented by the facts here is a decision best left to the legislative branch.[31]

30. Moreover, as noted above, the Court proceeded under the assumptions that Patient had ESRD and that his condition triggered his Medicare coverage. There is no undisputed factual evidence supporting either assumption. Thus, declaring the Plan in violation of the MSP Act would be speculative at best. *See Angora Enters.,* 796 F.2d at 387 (noting that courts "may take into consideration the speculativeness of the situation before them"

in determining whether to grant declaratory relief).

31. Given the undersigned's recommendations, the Court need not address the other defenses the City raised to the federal claim: (1) BMA's lack of standing (both directly and under the assignment contract), (2) defensive non-mutual collateral estoppel, and (3) the MSP Act's inapplicability where both Medicare and another health plan provide simulta-

**C.** ***The District Court Should Decline to Exercise Supplemental Jurisdiction Over Plaintiff's Remaining State Law Claims and the City's State Law Counterclaim***

As noted above, the only federal claim alleged in the Complaint is found in Count II and arises under the MSP Act, 42 U.S.C. § 1395y. Should the undersigned's summary judgment recommendation be adopted, the District Court would no longer have subject matter jurisdiction based on a federal question. *See* 28 U.S.C. § 1331 (cited in Compl. ¶ 6 as the basis of federal jurisdiction).

Plaintiff did not allege diversity of citizenship as a basis for federal jurisdiction in its Complaint.[32] Nevertheless, the Court is obliged to retain jurisdiction if it exists. *Doran v. Lee*, 287 F.Supp. 807, 813 (W.D.Pa.1968) (complaint should not be dismissed on the grounds of lack of jurisdiction if it reveals that any grounds for jurisdiction exist). The burden is on the plaintiff to demonstrate that the Court has diversity jurisdiction. *Fitzgerald v. Seaboard Sys. R.R., Inc.*, 760 F.2d 1249, 1251 (11th Cir.1985); *see also* Fed.R.Civ.P. 8(a)(1) (requiring "a short and plain statement" of the jurisdictional basis). Diversity jurisdiction requires "complete diversity," meaning that no plaintiff may be a citizen of the same state as any defendant. *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 412 (11th Cir.1999) (citing *Straw-*

*bridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806)).

The plaintiff is a corporation. Section 1332 of Title 28 states that a corporation "shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c)(1). Where corporate parties are involved, "allegations of citizenship must set forth the state of incorporation as well as the principal place of business of each corporation." *Getty Oil Corp. v. Ins. Co. of N. Am.*, 841 F.2d 1254, 1259 (5th Cir.1988) (citation omitted); *accord McCready v. eBay, Inc.*, 453 F.3d 882, 891 (7th Cir.2006); *Ryan v. Flame Refractories, Inc.*, 759 F.Supp. 774, 776–77 n. 3 (S.D.Ala.1991).

BMA alleges only that it is a "foreign corporation, duly organized and existing under the laws of Delaware." (Compl. ¶ 2.) Although BMA's state of incorporation is alleged, there is no mention of its principal place of business. Absent allegations concerning the corporate party's state of incorporation as well as its principal place of business, the pleading is insufficient for jurisdictional purposes. *Joiner v. Diamond M Drilling Co.*, 677 F.2d 1035, 1039 (5th Cir.1982); *see also McCready*, 453 F.3d at 891 ("McCready's complaint does not mention eBay's principal place of business; therefore he did not allege complete diversity."). Accordingly, no diversity jurisdiction exists here.[33]

---

neous coverage (relying upon *Blue Cross & Blue Shield of Texas, Inc. v. Shalala*, 995 F.2d 70 (5th Cir.1993)). The Court notes that United States District Judge Leon Jordan rejected this third defense as "hollow." *See Bio-Medi[c]al Applications of Tenn., Inc. d/b/a BMA of Kingsport individually and as assignee of Patient v. Central States, Se. and Sw. Areas Health and Welfare Fund*, 648 F.Supp.2d 988, 991 (E.D.Tenn.2009).

**32.** The diversity statute provides in relevant part as follows: "(a) The district courts shall

have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between—(1) citizens of different States...." 28 U.S.C. § 1332(a)(1).

**33.** Despite the claim that the Patient's outstanding balance is $690,382.15, the actual damages may be well below that figure. *See supra* note 16. Given the failure to allege complete diversity, the Court need not address the issue of whether the $75,000 jurisdictional amount could be satisfied.

As noted above, the only remaining claims in the case arise under state law. (*See* Compl. Counts I, III–IV.) Although the Complaint is silent on the issue, the only basis for federal jurisdiction over those state law claims is 28 U.S.C. § 1367, which provides in relevant part as follows:

> Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a).

Although entry of summary judgment against plaintiff on its federal question claim "does not deprive the Court of supplemental jurisdiction over the remaining state law claims ... under 28 U.S.C. § 1367(c),[34] the Court has the discretion to decline to exercise supplemental jurisdiction over non-diverse state law claims, where the Court has dismissed all claims over which it had original jurisdiction ...." *Baggett v. First Nat'l Bank of Gainesville*, 117 F.3d 1342, 1352 (11th Cir. 1997); *see also McCulloch v. PNC Bank, Inc.*, 298 F.3d 1217, 1227 (11th Cir.2002) (when a federal court has dismissed all federal claims over which it has original jurisdiction, it may decline to exercise supplemental jurisdiction over any remaining state law claims).

In exercising its discretion, a court may also consider factors other than those set out in the statute. "Where § 1367(c) applies, considerations of judicial economy, convenience, fairness, and comity may influence the court's discretion to exercise supplemental jurisdiction." *Baggett*, 117 F.3d at 1353 (citations omitted); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966) (justification for pendent jurisdiction "lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims").

The state law claims remaining in this case are complex, such as whether the assignment contract provides BMA with standing to sue or whether sovereign immunity bars plaintiff's claims against the City. Moreover, the other state contract and insurance claims are best left to a state court experienced in application of that law. Indeed, the Supreme Court has directed lower federal courts to avoid "[n]eedless decisions of state law," especially when federal claims are dismissed before trial *Gibbs*, 383 U.S. at 726, 86 S.Ct. at 1139.

In light of the foregoing, principles of judicial economy, convenience, fairness, and comity counsel the undersigned to **RECOMMEND** that the District Court decline supplemental jurisdiction under § 1367(c) over plaintiff's remaining state law claims. *See Carr v. Tatangelo*, 156 F.Supp.2d 1369, 1380–81 (M.D.Ga.2001) (dismissing state law claims in conjunction

---

**34.** 28 U.S.C. § 1367(c) provides as follows:

(c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

with granting summary judgment on federal claims'); *see also Gibbs*, 383 U.S. at 726, 86 S.Ct. at 1139 ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.") Thus, the Court should **DISMISS** plaintiff's state law claims found in Counts I, III and IV of the Complaint **WITHOUT PREJUDICE.** *See Covenant Media of Ga., LLC v. City of Lawrenceville, Ga.,* 580 F.Supp.2d 1313, 1319 (N.D.Ga.2008) (where the court dismissed the plaintiff's federal claims, and the remaining claims involved relatively complex issues of state law, the court dismissed the remaining state law claims without prejudice).

Similar analysis applies to defendant's counterclaim, which was brought under this Court's supplemental jurisdiction. (*See* Def.'s Counterclaim ¶ 1.) *See Dawson v. Office Depot, Inc.,* No. 09–60146–CIV, 2009 WL 789662, *2 (S.D.Fla. Mar. 23, 2009) (supplemental jurisdiction should not be exercised over the state law claims asserted in defendants' counterclaim). The undersigned further **RECOMMENDS** that the District Court decline to exercise supplemental jurisdiction and **DISMISS** the City's counterclaim **WITHOUT PREJUDICE.**

## IV. *CONCLUSION*

For the reasons explained above, the undersigned **RECOMMENDS** that Defendant's Motion for Summary Judgment [30] be **GRANTED IN PART,** and that Plaintiff's Motion for Summary Judgment [31] be **DENIED.**

The undersigned **FURTHER RECOMMENDS** that the District Court decline to exercise supplemental jurisdiction over the Complaint's remaining state law claims (Counts I, III, and IV) and that they be **DISMISSED WITHOUT PREJUDICE.**

The undersigned **FURTHER RECOMMENDS** that the District Court decline to exercise supplemental jurisdiction over the City's state law counterclaim and that it be **DISMISSED WITHOUT PREJUDICE.**

Plaintiff's Request for Oral Argument [32] is **DENIED.**

The Clerk is **DIRECTED** to terminate the reference to the Magistrate Judge. **SO ORDERED and RECOMMENDED,** this 18th day of September, 2009.

### ORDER FOR SERVICE OF *FINAL REPORT AND RECOMMENDATION*

Let this Final Report and Recommendation of the United States Magistrate Judge, made in accordance with 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and the Court's Local Rule 72.1B, be filed and a copy, together with a copy of this Order, be served upon counsel for the parties.

Pursuant to 28 U.S.C. § 636(b)(1), each party may file written objections, if any, to the Final Report and Recommendation within ten days of the receipt of this Order. Should objections be filed, they shall specify with particularity the alleged error(s) made (including reference by page number to any transcripts if applicable) and shall be served upon the opposing party. The party filing objections will be responsible for obtaining and filing the transcript of any evidentiary hearing for review by the District Court. If no objections are filed, the Final Report and Recommendation may be adopted as the opinion and order of the District Court, and any appellate review of factual findings will be limited to a plain error review. *United States v. Slay,* 714 F.2d 1093, 1095 (11th Cir.1983) (per curiam).

The Clerk is directed to submit the Final Report and Recommendation with ob-

jections, if any, to the District Court after expiration of the above time period.

**SO ORDERED**, this 18th day of September, 2009.